## THE PEOPLE *ex rel.* E. R. GALVIN *v.* CALEB DORSEY.

ELIGIBILITY TO OFFICE OF DISTRICT ATTORNEY.—There is nothing in the Constitution or laws of this State, nor is there any usage or custom which requires that a license to practice law from the Supreme, or any other Court, must be obtained before a person can become eligible to the office of District Attorney.

APPEAL from the District Court, Fifth Judicial District, Tuolumne County.

At the general election held in Tuolumne County, in September, 1863, Caleb Dorsey was elected District Attorney of said county for the term of two years, and duly qualified and entered upon the discharge of the duties of the office. Dorsey was licensed to practice as an attorney and counsellor of the Supreme Court. At the general election held in said county in September, 1865, the relator, Galvin, was elected District Attorney of said county for the term of two years, to commence on the first Monday in March, 1866. Galvin duly qualified and demanded possession of the office, but Dorsey refused to deliver up to him possession of the same. On the 2d day of June, 1866, this action was commenced to obtain possession of the office. Dorsey set up in his answer as a defense, that Galvin at the time he was elected and qualified, and his term of office commenced, was not licensed to practice as an attorney in any of the Courts of this State, and that therefore he was not entitled to exercise or enjoy the office. The answer also averred that Galvin was not admitted to the Supreme Court until April, 1866. The plaintiff demurred to the answer, and the demurrer was sustained by the Court below. Defendant declined to amend, and judgment was rendered against him by default. Defendant appealed from the judgment.

*H. P. Barber*, for Appellant.

The relator at the time of his election was constitutionally ineligible, not having been admitted as an attorney in any Court of this State, and being so, his election was a nullity. (*Patterson* v. *Miller*, 2 Met., Ky. 493.) The Constitution, Article VI, section ten, provides that " the Legislature shall provide for the election of District Attorneys, and shall fix by law their duties," etc. The Legislature has allotted to these officers certain duties which can only be performed by a licensed attorney. (Laws 1850, p. 112, Sec. 3.) The question has been expressly decided, (See *The People ex rel.*

38

*Hughes* v. *May*, 3 Mich. 598 ; see, also, *McKean* v. *Devries*, 3 Barb. 196 ; *Ray* v. *Harley*, 1 Duer, 637.)

*Coffroth & Spaulding*, for Respondent.

The office of District Attorney is a constitutional office. " The Legislature shall provide for the election of  *  *  * County Clerks, District Attorneys, Sheriffs, and other necessary officers, and shall fix *by law* their duties and compensation." (Constitution of Cal., Art. VI, § 11.) Hittell's Digest, Article two thousand three hundred and ninety-six, section one, contains the law which the Legislature " fixed " for the regulation of the " duties and compensation" of District Attorneys:

" Sec. 1. There shall be a District Attorney in each county of this State, who shall be elected by the electors of the county," etc.

" Sec. 2.  *  *  * He shall execute and file with the Clerk a bond to the State," etc.

" Sec. 3. He ' shall be the public prosecutor ' in each county."

" Sec. 5. If he fails to attend any term of those Courts, the Court shall designate *some other person* to perform the duties of District Attorney during his absence from the Court, who shall receive a reasonable compensation, to be certified by the Court, and paid from the county treasury."

No qualification is named or authorized. Any citizen of competent age to exercise civil and political functions is eligible. The whole spirit and tendency of our Constitution is to open all civil and political rights and privileges to all citizens. *To be a citizen,* is to be qualified for the enjoyment of any right or privilege under our State Government. There is no exception to this, unless a fixed time of residence, in one or two instances, be deemed such. It is not in the power of the Legislature or judiciary to establish arbitrary exclusions from office where the Constitution has not. (*Barker* v. *People*, 3 Cow. 703 ; *Page* v. *Hardin*, 8 B. Mon. 660.)

*Barber*, in reply.

The *Constitution* provides for the election of a "District Attorney." Now, *at the time of the adoption of the Constitution*, what was the *then understood* meaning of the words "District Attorney?" The answer is palpable that an *attorney at law* was meant; for if not, why in an Act passed but a few months afterwards, in regard to the constitutional office of District Attorney, was it provided, that in case of his absence the Court should appoint some other *attorney?* This was to be done also in case of his being "employed as counsel"— how could he be employed as *counsel* unless he was an attorney at *law?* The word "attorney," when not coupled with any qualifying phrase, means "attorney at law." (*Clark* v. *Morse*, 16 Lou. 575; 1 Blackstone, 26; 2 John. Cases, 102; 8 Barb. 355.)

By the Court, SANDERSON, J.:

There is nothing in the Constitution or laws of this State which requires that a license to practice law from this or any other Court must have been obtained before a person can become eligible to the office of District Attorney. The Constitution merely directs that the Legislature shall provide for the election, among other officers, of District Attorneys, without declaring what qualifications shall be required of them. (Art. VI, Sec. 11.) Nor is there anything in the existing legislation of this State which makes a license to practice law a condition to the right of any person to hold that office. (Statutes 1851, p. 187; 1863, p. 95.) The first Act which was passed in relation to the office of District Attorney contained an expression which may possibly give some color to the theory of the appellant, that, in the judgment of the first Legislature, the office should be filled only by licensed attorneys. It provided that, in the absence of the District Attorney, or in the event of his being disqualified in any case, the Court should appoint "some other attorney" to perform his duties. (Statutes 1850,

p. 113, Sec. 3.)   The most that can be claimed for that provision is, that it implied that none but licensed attorneys should hold the office.   Admit this to be so ; in the subsequent Act, passed in 1851, this expression was amended so as to read " some other person," thus doing away with the implication, if any, to which the former language might have given rise.   (Statutes 1851, p. 187, Sec. 5.)   To limit the performance of the duties of the office to licensed attorneys would undoubtedly be wise and politic if there is any danger of incompetent persons seeking and obtaining it.   Not more so, however, than in the case of the Justices of this Court, or the Judges of the District and County Courts; yet neither the Constitution nor the Judiciary Act provides that the Justices of this Court, or the Judges of the District and County Courts shall be licensed attorneys.   The Constitution is silent upon the subject.   The Judiciary Act merely requires that the Justices of this Court shall have been citizens of the United States and residents of this State for two years next preceding their election—nothing being said about their being licensed attorneys.   (Statutes 1863, p. 333.)

We have carefully examined the case of *The People ex rel. Hughes* v. *May,* 3 Mich. 598, upon which the appellant relies. To us the reasoning of the Court is not at all satisfactory, notwithstanding there is no substantial difference between the Constitution and statute of Michigan and our own.   In the Constitution of Michigan the words " Prosecuting Attorney " are used to designate the office.   The Court found in this designation a limitation, on the question of eligibility, to licensed attorneys.   Undoubtedly this designation indicates to some extent the character of the duties which belong to the office, but how can it be claimed that it indicates, much more prescribes, the qualifications of the officer ?   The Court seems to have confounded the two.   The Constitution makes no provision for licensing attorneys, but leaves that matter entirely to the discretion of the Legislature, or perhaps, in the absence of any action on the part of that body, to the Courts. Suppose the Legislature had passed no law providing for the

licensing of attorneys, or had passed a law, as they undoubtedly might have done, allowing everybody to' practice law, according to the Supreme Court of Michigan, what would become of the office of District Attorney? In the event first supposed there would be no licensed attorneys, and therefore, according to their doctrine, nobody eligible to the office of Prosecuting Attorney. In the latter event it might be claimed that everybody would be a licensed attorney, and therefore everybody would be eligible to the office of District Attorney. These results are possible, and therefore demonstrate the fact that the framers of the Constitution could not have intended what that Court determined that they did. It would be going a great way beyond any rules of construction with which we are acquainted to hold that a mere name given to an office *ex proprio vigore* defines also the qualifications of the officer. Under such a doctrine no one but a surveyor would be eligible to the office of Surveyor-General, no one but a printer would be eligible to the office of State Printer, no one but a pedagogue would be eligible to the office of Superintendent of Public Instruction, and no one but a bibliomaniac would be eligible to the office of State Librarian. To so hold would be to accord more meaning to a name than was accorded by Juliet, and to afford a new test of official qualifications.

But independent of this, it is absurd to claim that the framers of the Constitution were careful to provide that no one but a licensed attorney should hold the inferior office of District Attorney, while they made no such provision in regard to the highest judicial officers named in the Constitution. It is not provided that Judges shall be lawyers even, much less licensed attorneys. A man's fitness for Judge or District Attorney does not depend in any just sense, nor is it made to depend, upon his being a licensed attorney. Nor is there, in a legal sense, any force in the idea that Judges and District Attorneys must be lawyers, much less licensed lawyers. The earlier Chancellors of England were ecclesiastics, not lawyers. Many members of the High Court of Parliament

are not lawyers, much less licensed attorneys. So of the Court of Errors, which was once the Court of last resort in the State of New York. So of the earlier Judges of New Hampshire. Chief Justice Ware was a theologian, not a lawyer; one of his associates was a physician and the other a farmer. After the Revolution, the Court of Common Pleas in that State was presided over by Dudley, who was a farmer; Langdon, who was a merchant, and Farrar, who was educated for the pulpit and not the bar. Justices of the Peace are rarely lawyers or licensed attorneys. Sometimes in this State men who were neither lawyers nor licensed attorneys, to the personal knowledge of members of this Court, have filled the office of County Judge, yet no one ever questioned their eligibility.

There is, therefore, no previous custom or usage in this respect which, as suggested by the Supreme Court of Michigan, has by implication become, to all intents and purposes, a part of the Constitution.

The Act in relation to attorneys and counsellors (Statutes 1851, p. 48) has no bearing upon this question. It deals with a different subject. It prescribes the qualifications of attorneys and counsellors, as such, and not public officers; or, in other words, the conditions upon which persons so inclined may be allowed to appear and practice law in our Courts in their own right and not in virtue of official position. It treats of attorneys and counsellors as members of a profession, and not as public functionaries.

Judgment affirmed.