# CHARLESTON.

STATE *ex rel.* P. H. KELLY *et als. v.* STATE ROAD
COMMISSION *et als.*

(No. 5753)

Submitted July 20, 1926.   Decided September 7, 1926.

1. MANDAMUS—

Mandamus will not issue to compel the State Road Com-
mission to perform an alleged executory agreement made by
it to expend funds derived from sale of state road bonds, on
county-district roads.

(Mandamus, 38 C. J. §§ 360, 363.)

2. SAME—

Mandamus will only go to protect a clear legal right, and
will never lie to compel the performance of an act prohibited
by law.

(Mandamus, 38 C. J. §§ 29, 56, 363.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not
part of syllabi.)

Original proceeding by the State, on the relation of P. H.
Kelly and others, taxpayers, for mandamus to be directed to
the State Road Commission and others.

*Writ refused.*

*Williams & Riffe,* and *A. M. Belcher,* for relators.

*Howard B. Lee,* Attorney General, *R. Dennis Steed,* Assist-
ant Attorney General and *Hubard & Bacon* and *Dillon &
Mahan,* for respondents.

LIVELY, JUDGE:

P. H. Kelly and three other citizens and taxpayers of Fay-
ette County pray for mandamus to compel the State Road
Commission to take over, build and maintain sections of two
roads, one known as Route 41, the portion thereof to be built
lying between Fayette Station and Winona; the other being
that section of County Road No. 1 lying between Deepwater
and the end of the paved road east of Montgomery, all in
Fayette County.

The relief sought is based on alleged agreements entered into between the county court and citizens and taxpayers of the two magisterial districts in which the sections lie and the Commission, to the effect that in consideration of the expenditure of county funds and funds derived from district bonds upon portions of the two routes by the County Court of Fayette County, the Commission would take over, build and maintain the said sections as parts of the system of state highways out of the first moneys in its hands available for expenditure in Fayette County. The petition avers that the Commission now has under its control from sale of state road bonds funds available for expenditures on these roads, but instead of using the money to which Fayette County is entitled on the roads as it agreed to do, the Commission has surveyed and located another road leading from Big Creek on the Midland Trail three and one-half miles west of Hawk's Nest, thence across the New River by bridge at Cotton Hill Station to Beckwith on County Road No. 1, and purposes to expend the money in construction of that road, and has already advertised for and received bids for the grading thereof. Tersely stated, petitioners claim that the Commission contracted with the County Court of Fayette and certain citizens and taxpayers that it would build the two sections of roads named, out of available funds which should come into its hands in the future, in consideration of expenditure of county and district moneys on other portions of the same roads; that it now has money available derived from state bonds, but proposed to use it on another route (from Midland Trail via Cotton Hill Station to Beckwith), thus violating its contract. Petitioners' counsel argue that it is the plain ministerial duty of the Commission to carry out its contract so made, and mandamus will lie to compel it to do so.

The alleged contracts are based on two certain orders entered by the Commission and personal assurances by members of the Commission to petitioners and others. By the Commission's order of July 31, 1923, it is recited that the members of the County Court of Fayette had pledged themselves to expend $60,000.00 in the years 1923 and 1924 on six miles of the road between Montgomery and Deepwater, and had re-

quested the Commission to expend a like amount on that road, and the Commission having already expended all the money in its hands available for road construction in Fayette County, agreed to apply available funds from future bonds authorized by the legislature toward paving the road as requested. By order of March 23, 1923, it is recited that the voters of Nuttall District propose to issue district bonds and expend $100,000.00 on the road from the Midland Trail to a point between Winona and Boone (on Route 41), and therefore in consideration thereof the engineer of the Commission was ordered to make a survey as outlined in the proposed bond issue.

We deem it unnecessary to advert to the alleged conversations and assurances between individual members of the Commission relative to the expenditure of moneys by the Commission on the routes named, for the reason that assurances and promises of members of such boards or commissions while not sitting as a board or commission, but made as individuals, do not bind the board or commission. *Atlantic Bitulithic Company* v. *Town of Edgewood*, 76 W. Va. 630; *Holswade* v. *City of Huntington*, 96 W. Va. 124.

The Commission in its return denies that either of the above-mentioned orders constitutes a contract, or that either of these routes (Route 41 and County Road No. 1) have ever been taken over as state roads by it, as provided by law. It avers that the order of July 31, 1923, entered by it did not require it at any definite time to expend money of the state on said county road, and denies that it now has, or has ever had, since the entry of the order, any sum available therefor; because what money it now has which may be expended in Fayette County is necessary to be used in the construction of a main highway from the Midland Trail to Beckwith in said county, which it says it proposed to do and which will be cheaper in construction by about $200,000.00 than the route of which said County Road No. 1 is now a part, and on a much better grade and shorter by approximately five miles; and will save to the state (by reason of federal aid) approximately $300,000.00, with future maintenance of 3.44 miles as against 8 miles over Cotton Hill Mountain (now part of County Road No. 1).

Demurrer and motion to quash the alternative writ is interposed.

The statute divides the public roads into two classes: (1) state roads, and (2) county district roads; and says that state roads are those which have been taken over for construction or maintenance by the Commission. County-district roads are all other public roads except streets and other public ways in municipalities. Chap. 43, Sec. 4, Code. The record fails to show that the sections of roads on which it is claimed that the Commission agreed to expend money have been taken over for construction, reconstruction and maintenance by order of the Commission, and certified to the county clerk for recordation. Sec. 20, Chap. 43, Code. The sections of road sought to be improved by this mandamus are *county-district roads.* Section 15 of the act prohibits the use of funds derived from the sale of state bonds except for construction and reconstruction of *state roads.* Before such money could be legally expended on the sections of road in question the Commission must take over these sections as state roads. Can we in this proceeding compel the Commission to adopt these sections as state roads? How much of such roads would we compel them to take over and maintain as such? The statute, Sec. 20, says that the Commission shall, when funds are available, take over hard roads and graded dirt roads on state routes *which in the opinion of the Commission* shall have been constructed and maintained in accordance with approved methods, or in accordance with recognized standard plans and specifications. Discretion and judgment are to be used by the Commission in the taking over of county-district roads for state maintenance. It is well settled that mandamus will never be used to compel discretion vested in public officials. *Buxton* v. *O'Brien, Judge,* 97 W. Va. 343.

As above stated, the basis of the right to the peremptory writ is the alleged execution of contracts on the part of the Commission to expend state money derived from the sale of state road bonds on county-district roads, the consideration being an expenditure of county taxes and money derived from district bonds on parts of the same roads. Does the Commission have power to use the state money on county-district

roads? Section 15 of the act answers the question in the negative. That section designates for what purposes only the state road fund shall be expended, and expressly says that none of the funds derived from the sale of state bonds for road purposes shall be used or expended, except for construction or reconstruction of state roads. We cannot compel the Commission to do an act *malum prohibitum. Dempsey* v. *Board,* 40 W. Va. 99; *State* v. *County Court,* 47 W. Va. 672. The return denies that the orders entered constitute contracts as claimed in the alternative writ; but even if the Commission did contract as contended by petitioners, or had it entered into a formal written contract to expend state money derived from sale of state road bonds on county-district roads, the contract would have been beyond its powers under the statute and could not have been enforced. We apprehend that such illegal expenditure could be stopped by injunctive process in a proper case by any person injuriously affected. It may be remarked with propriety that the Commission should be meticulously careful not to leave impressions with the public concerning expenditures which it may not lawfully make, or which future exigencies would likely prevent.

The petition attacks the judgment and discretion of the Commission as unwise and improvident in the proposed building of the new road from Big Creek on the Midland Trail about three and one-half miles west of Hawk's Nest, thence across New River by Cotton Hill Station to Beckwith, a distance of 3.44 miles, on the ground that the route is excessively costly and impracticable. The return says it is the most practicable, and, from an engineering standpoint, the best way and can be constructed for about $200,000.00 less than the Cotton Hill route. That controversy has little bearing on the issue of the legal right of petitioners to compel performance of the alleged contracts to expend money elsewhere.

Bearing upon the good faith of the Commission in refusing to perform the alleged contracts is the charge that in the opinion and belief of the petitioners, the Commission was influenced to designate the Big Creek-Cotton Hill Station-Beckwith route because H. R. Anderson, its chief engineer, Walter A. Friend, an employee of the Commission, and Wm. Brew-

ster, federal road engineer, together with certain others, purchased a tract of 200 acres at Hawk's Nest on the Midland Trail, about three and one-half miles distant east from the point of connection of said proposed route with the Midland Trail, by deed bearing date March 2, 1925. Just in what way the Commission was influenced by this fact is not set out; possibly it is meant to charge that in order to favor its engineers and enhance the value of their land, the Commission was influenced to adopt the route. How it will enhance the value of the land, or that it has done so, is not charged. The return denies that it was in any way influenced by this fact, and avers that a number of years ago the proposed route had been recommended to them by Engineer J. K. McGrath. The use of official position and knowledge to enrich those holding that position or to enrich their friends would be quickly condemned by the courts. The engineers named are not parties here, nor is it charged that they discovered this practicable route and recommended it because of their ownership of the tract of land three and one-half miles away. The charge made on information and belief that the Commission was influenced by this fact, or other ulterior motive, is not substantiated; but it is not improper to remark that the engineers in the employ of the Commission, its servants and agents, should be extremely careful to avoid just public criticism in the use of information obtained by reason of their official positions. Criticism of this character tends to weaken the effectiveness of the Commission and to hamper it in its important statewide work.

There is another point, a serious one, raised by the motion to quash. Counsel for the Commission asseverate that the Commission is a state agency peculiarly representing the state in its program to build a comprehensive system of state roads, and a suit against it is in fact a suit against the state, which is prohibited by the Constitution, which declares that the state shall never be a defendant in any suit at law or in equity. *Miller* v. *State Board of Agriculture,* 46 W. Va. 192; *Miller Supply Co.* v. *State Board of Control,* 72 W. Va. 524; *Gordon* v. *Board of Control,* 85 W. Va. 739; and *Mahone* v. *State Road Commission,* 99 W. Va. 397, are relied upon. We do not deem

it necessary at this time to pass upon that contention, for the writ must be refused for the reason above stated, namely, that mandamus will not lie to enforce the alleged executory contracts.

*Writ refused.*