STATE *ex rel.* J. ZANE SUMMERFIELD

*v.*

C. H. MAXWELL, CLERK, ETC., *et al.*

(No. 12328)

Submitted April 14, 1964.          Decided April 17, 1964.

536

*Haymond, President,* dissenting in part, concurring in part.

*Mahan, Higgins, Thrift & Graney, R. J. Thrift, Jr.,* for relator.

*Warren A. Thornhill, III,* for respondents.

BROWNING, JUDGE:

In this original proceeding in mandamus, petitioner, J. Zane Summerfield, a candidate for the nomination for the office of prosecuting attorney of Fayette County on the democratic ticket, seeks to compel the respondents, the board of ballot commissioners for Fayette County, to omit the name of the respondent, Bob Prowse, also a candidate for such nomination, from the official ballot of the democratic party to be voted on in that county at the primary election to be held on May 12, 1964.

The petition identifies the parties and alleges in substance that: any eligible, duly qualified person securing the nomination to the office of prosecuting attorney of the democratic party would be entitled to be voted for and elected to that office at the general election to be held on November 3, 1964, and thereafter to assume and undertake the duties thereof; that the respondent, Prowse, is not now and will not be on January 1, 1965, an attorney at law, duly licensed and admitted to practice in the courts of this state, does not possess the qualifications therefor and is not a member of the West Virginia State Bar. The petition then alleges that the prosecuting attorney must, by law, perform various acts constituting the practice of law, which can only be performed by a person duly licensed to practice law in this state, and the respondent, Prowse, not being licensed or qualified to perform such duties, is disqualified to be elected to, or to hold, the office of prosecuting attorney of Fayette County, and concludes with the prayer above mentioned.

Respondents, the board of ballot commissioners, filed their answer, in response to the rule issued by this Court, averring that: they have legally and lawfully fulfilled all duties imposed upon them by law; they have no authority to question the eligibility of the respondent, Prowse; Prowse has complied with all prerequisites necessary to secure the placing of his name on the primary election ballot; and, unless restrained by this Court, they will cause his name to appear on such ballot. By supplemental answer, the board alleges that a contract for the printing of ballots has been let and a number of ballots, sufficient for absentee voters, have been printed which bear the name of the respondent, Prowse.

Respondent, Prowse, appearing in response to the rule, demurred to the petition, primarily on the ground that mandamus will not lie in the premises, and answered, admitting the substantial allegations of the petition, but averring that no provision of the constitution, or any statute requiring the performance of acts constituting the practice of law, requires that the prosecuting attorney personally perform such acts. The answer also avers that provision is made by statute for the appointment of assistant prosecuting attorneys in Fayette County, which statute specifically provides that such assistants must be practicing attorneys, and who, therefore, could perform any legal functions which he was ineligible to perform. Petitioner demurred to the answers of both respondents on the grounds that such answers are insufficient in law to constitute a defense to this proceeding.

Thus, there is presented the principal issue in this proceeding, which is whether or not a person who is not a member of the West Virginia State Bar, and entitled to practice the profession of law in this state, may be elected to and serve in the capacity of prosecuting attorney. This question is one of first impression in this state, although there is considerable authority elsewhere to which reference will hereinafter be made.

Article IX, Section 1 of the constitution of this state provides that "The voters of each county shall elect a Sur-

veyor of Lands, a Prosecuting Attorney, a Sheriff, and one and not more than two Assessors, who shall hold their respective offices for the term of four years." Code, 3-1-17, as amended, directs that "There shall be elected, . . . at the general election to be held in the year nineteen hundred and sixty-four, and in every fourth year thereafter, a sheriff, prosecuting attorney, . . . ." Code, 7-4-1, as amended, recites the extensive and varied duties of a prosecuting attorney and further reference to that section will be hereinafter made. There is no provision in the constitution of this state or any statute defining qualifications or requirements necessary for an individual to be eligible to the office of prosecuting attorney.

However, the threshold question presented in this proceeding in mandamus is whether in such proceeding a writ may issue giving the petitioner the relief which he seeks. It will be noted that the respondent, Prowse, has not presented himself with a certificate of election to the office of prosecuting attorney with the request that he be qualified and sworn so as to execute the duties of that office. He has not been elected to the office of prosecuting attorney of that county and he has not even become the nominee of his political party for such office. However, he has complied with the formal requirements in the office of the clerk of the circuit court of Fayette County necessary to make him a "candidate" for the democratic nomination for that office, has paid the necessary filing fee and otherwise formally qualified to have his name placed upon the primary election ballot for the election to be held on May 12, 1964. Section 3, Article VIII of the constitution of this state, relating to the scope of jurisdiction of this Court, provides in part that "It shall have original jurisdiction in cases of habeas corpus, mandamus, and prohibition." Section 12, Article VIII of the constitution provides in part that the circuit court shall have jurisdiction "of all cases of habeas corpus, mandamus, quo warranto, and prohibition;". Thus, it would appear that the circuit court of Fayette County and this Court have concurrent jurisdiction of a case such as this one.

The threshold question, heretofore, has been the cause of much deliberation on the part of this Court, but it would appear that that issue has now been resolved and that under the salutary rule of stare decisis it is no longer a problem. The fourth syllabus point of *State ex rel. Zickefoose, et al.* v. *Garland West, et al.*, 145 W. Va. 498, 116 S. E. 2d 398, is in this language: "Where, in a primary election, a person has been nominated as a candidate for sheriff, his eligibility or ineligibility to be elected, as provided in Article IX, Section 3 of the Constitution of West Virginia, may be determined in a proceeding in mandamus; and such proceeding is not premature even though it is prosecuted prior to the date of the general election." Two of the judges of this Court wrote dissenting opinions in that case, they being of the opinion that mandamus was not the proper remedy by which the name of a candidate for election for the office of sheriff could be removed from the ballot of eligible candidates to be voted for in the general election of that year, 1960. Reference is made to the able majority opinion, the two able dissenting opinions and to the concurring opinion in the *Zickefoose* case for the positions of the different judges who were members of this Court at that time (July 12, 1960). In the case of *State ex rel. Duke* v. *O'Brien, et al.*, 145 W. Va. 600, 117 S. E. 2d 353, decided September 20, 1960, approximately two months later, the holding in the *Zickefoose* case was adhered to and followed. See also *State ex rel. Cline* v. *Hatfield*, 145 W. Va. 611, 116 S. E. 2d 703.

The word "jurisdiction" is not easy to define as it is used in constitutions, statutes and appellate court opinions. Literally, it is composed of two Latin words meaning "I speak by the law". The "jurisdiction" of this Court comes from three sources—the constitution of this state; the legislature; and the common law, from which emanates some of its so-called inherent power. The constitution of this state specifically provides by Article VIII, Section 21, that "Such parts of the common law, and of the laws of this State as are in force when this article goes into operation, and are not repugnant thereto, shall

be and continue the law of the State until altered or repealed by the Legislature. . . ."

A review of the *Zickefoose* and *Duke* cases and the prior cases cited therein relating to the "jurisdiction" of this Court in mandamus "to compel any officer" of elections to "perform legally any duty" imposed upon him by the provisions of Chapter 3 of the code of this state entitled "Elections" shows that the judges constituting the majority and those comprising the minority were in agreement upon more points than they were in disagreement. Apparently they agreed that Section 3 of Article VIII of the constitution of this state conferred original, general jurisdiction in mandamus upon this Court. There could have been no disagreement that, by Chapter 25 of the Acts of the Legislature of 1893, now a part of Code, 3-1-45, as amended, specific "jurisdiction" in mandamus was conferred upon this Court relating to elections in this language: "Any officer or person, upon whom any duty is devolved by this chapter, may be compelled to perform the same by writ of mandamus" and "A mandamus shall lie from the supreme court of appeals, . . . to compel any officer herein to do and perform legally any duty herein [Code, Chapter 3, as amended] required of him". All are agreed that mandamus is an extraordinary writ and that it does not lie to compel the performance of an illegal or unauthorized act; or where there is no duty of the defendant to perform the act which the petitioner seeks to have him perform; or to direct the exercise of discretion; or where the petitioner has failed to show a clear legal right to the remedy or where there is another adequate and complete remedy. There is mutuality of conception to the effect that neither a ballot commissioner nor any other "officer or person" named in Chapter 3 of the code has "jurisdiction", or the administrative or judicial power, to make an investigation or inquiry relative to the qualifications of any candidate for any national, state, county, district or municipal office. Furthermore, all are agreed that if such officer or other person, as the result of such an illegal inquiry, determines that a candidate for elective office is not qualified to become such candidate, this

Court has jurisdiction to direct such person to place the candidate on the ballot upon a finding that such candidate is eligible to be nominated for and elected to the office which he seeks.

It would seem that at that point unanimity of perception ceases and the majority and the minority came to a parting of the ways. It is the view of the minority that, inasmuch as no "officer or person" is empowered under the provisions of Code, Chapter 3, as amended, to determine the eligibility of a candidate for political office, either where he attempts to file therefor or to remove his name from the list of candidates to be placed upon the ballot for such election, that this Court does not have the "jurisdiction" in mandamus to require such person or officer to "omit" placing such candidate upon the ballot or direct the election official to remove the name of such candidate from the ballot even though, after full hearing before this Court, it clearly appears that such candidate is legally ineligible to be "elected" to and hold the office which he seeks. The view of the majority is expressed on page 504 of the *Zickefoose* case quoting from the opinion of *Adams, et al.* v. *Londeree,* 139 W. Va. 748, 83 S. E. 2d 127: " 'The question involved there, however, related to the jurisdiction of the board of ballot commissioners to determine the qualification of a candidate in a primary election, where the certificate of candidacy was regular and showed on its face that the candidate was qualified to hold the office for which he sought the nomination. No jurisdiction to determine such question was vested in the board of ballot commissioners by any statute. *Therefore, it had no jurisdiction to make any independent investigation in order to determine such qualification. But lack of jurisdiction of such a board cannot be determinative of jurisdiction of a court having original jurisdiction in mandamus.*' (Italics supplied.)" The minority suggests that the only remedies in such case to prevent a candidate from serving in an office to which he is for any reason ineligible—such as the respondent, Prowse, in this case—arise after his election, by election contest, quo warranto or upon an information in the nature of quo warranto.

In the concurring opinion in the *Zickefoose* case this observation was made with reference to these remedies: "It is true that there are methods, subsequent to an election, by which the title to an office may be determined. However, these remedies—election contest, quo warranto, or upon information in the nature of quo warranto—are not available to the electorate. Only a defeated candidate may contest his opponent's election. In the instant case, it is unlikely that the defeated candidate would go to the expense of such a proceeding, in the event Suder is victorious, when he could not thereby secure for himself the office of Sheriff of Upshur County. Quo warranto could be prosecuted only by the Prosecuting Attorney of Upshur County or the Attorney General in their discretion, two gentlemen whose identities are not now capable of ascertainment. If they declined to proceed in this manner they could not be forced to do so. A proceeding upon an information in the nature of quo warranto might be prosecuted by an 'interested person.' A casual examination of the majority and dissenting opinions in *State ex rel. Morrison, et al.* v. *Freeland,* 139 W. Va. 327, 81 S. E. 2d 685, is sufficient to indicate the almost impossibility that any such 'interested person' exists in this case."

In no previous case has this Court considered the precise question presented in this case as to whether this Court has the authority in a mandamus proceeding to prohibit the proper officials from placing the name of an allegedly illegal candidate upon a *primary* election ballot. However, that question gives this Court no difficulty and certainly under the principle laid down in the *Zickefoose* case and the other cases to which reference has heretofore been made there is no reason for establishing a different rule as to the candidacy of a person for a county office prior to the primary election rather than removing his name from the general election ballot subsequent to a primary election at which he had been nominated by his party. A board of ballot commissioners has not "legally" performed the duties required of it, which is to prepare a ballot of candidates for the offices to

be filled at a primary or general election, until it has placed upon such ballot candidates eligible to be nominated for or elected to the various offices, and where this Court has found that a person is not a qualified candidate to be voted upon in such election, the board has not "legally" performed its duties as provided by Code, Chapter 3, as amended, until it has removed his name from the ballot as directed by this Court. There is no officer or person other than the board of ballot commissioners that has the authority to perform this legal duty and therefore it is incumbent upon the board to perform the act required of it by a decision of this Court and until it has done so it has not "legally" performed the duties required by the provisions of Code, Chapter 3, as amended. This Court, therefore, and after much further serious deliberation, adheres to and approves the principle announced in the line of decisions beginning with *State ex rel. Pack* v. *Karnes*, 83 W. Va. 14, 97 S. E. 302, and culminating in the *Zickefoose* and *Duke* cases, and insofar, but only insofar, as the cases of *State ex rel. Schenerlein* v. *City of Wheeling*, 144 W. Va. 434, 108 S. E. 2d 788; *State ex rel. Harwood* v. *Tynes*, 137 W. Va. 52, 70 S. E. 2d 24; *State ex rel. McKnight* v. *Clark*, 86 W. Va. 496, 103 S. E. 399; and *Martin* v. *White*, 74 W. Va. 628, 82 S. E. 505; are in conflict therewith, such cases are hereby expressly overruled, and any language similarly in conflict contained in the cases cited therein is disapproved.

When this Court is presented with a question of first impression and finds that the constitutional and statute law of this state are silent upon it, the Court looks to the decisions of courts of last resort in other jurisdictions for guidance although it is not bound by the decisions of such courts. There is ample authority elsewhere upon the primary question before this Court in this case and reference to such cases will be made chronologically. The first such case that we find is *The People ex rel. Hughes* v. *May*, 3 Mich. 598, decided in 1855. In that case it was held that no person who had not been previously admitted to practice as an attorney at law was eligible to hold the office of prosecuting attorney. The Michigan constitutional

provision at that time, like our present one, prescribed no qualifications for that office. The California and Kansas Courts, under similar constitutional provisions, came to contrary conclusions in the cases of *People ex rel. Galvin* v. *Dorsey,* 32 Calif. 296, decided in 1867, and *State* v. *Swann,* 56 P. 750 (Kan., 1899). However, perhaps it should be observed that shortly after the rendering of those decisions, the respective legislatures enacted statutes prohibiting any person other than an attorney at law from serving as a district or county attorney, the offices equivalent to what we designate as prosecuting attorney.

In the case of *State* v. *Russell* (Wis., 1892, 53 N. W. 441, a Minnesota attorney, "of great learning and experience", was employed as special counsel to assist in the prosecution of a murder case. Such attorney was not a resident of Wisconsin or a member of the Wisconsin bar and the Supreme Court, on appeal, in holding the appointment of such attorney to be prejudicial error, said: "There is no statute that requires the attorney general to be a lawyer, or the judges of this court to be lawyers. Such a qualification is inherent in the very office itself, and required by the duties to be performed by him. The prosecutor of the pleas of the state is here called the 'district attorney.' To be a district 'attorney,' he must be a lawyer. He is not an attorney in fact. He must be an attorney at law. The name of the office implies it." Furthermore, the Court stated in its opinion that "Attorneys must take our constitutional oath, and district attorneys must. also give a bond. All others are strangers to our laws and in our courts. But it is plain enough that the assistant counsel of our district attorneys must be attorneys at law, and, if so, they must be of this state."

The pertinent question before the Supreme Court of South Dakota in *Danforth* v. *Egan,* 119 N. W. 1021 (1909), was whether an attorney who had been disbarred for violation of legal ethics was eligible to hold the office of prosecuting attorney of one of the counties of that state. This was an election contest after the disbarred attorney had received a majority of votes cast for that office in the

general election. The Court held that he was not eligible for that office and in the opinion stated that if he "should be admitted into this office, he could perform but a small part of the duties thereof.", inasmuch as he was not a practicing attorney after his disbarment and had the same status as a person who had never been admitted to the bar. The Court further said that the defendant's action "in allowing his name to go upon and remain on the ballot was a fraud upon the people of Minnehaha county, who had a right to exercise their choice between two or more persons, either of whom was fully authorized and qualified to perform all the duties of the office if elected." Upon the further contention that the defendant could employ a deputy who was a qualified attorney to perform certain of the duties of the office, the Court held in the fifth headnote that "Where a disbarred attorney is elected to the office of state's attorney, and is disqualified because unable to perform the duties of the office, the fact that he might perform the duties of the office by deputy does not qualify him, as he must discharge the duties of his office himself."

In the case of *State ex rel. Kinsella* v. *Eberhart, Governor*, 133 N. W. 857 (1911), the Court upheld the action of the governor of Minnesota in removing Kinsella from the office of county attorney upon the ground of "malfeasance and nonfeasance" in office, but stated in the opinion that "The statute does not authorize removal of a county attorney simply because of his ignorance of the law, for, strange as it may seem, the Constitution does not require such officers to be attorneys at law, or that they be learned in the law. . . . There is nothing to prevent a layman, absolutely unqualified from the standpoint of knowledge and experience, from holding the office of county attorney, and then securing the necessary legal assistance from an attorney." To the same effect see *State ex rel. Knappen* v. *Clough* (1876), 23 Minn. 17. The legislature of Minnesota has not subsequent to the decisions of the appellate court in those two cases seen fit to provide by legislation that a county attorney must be an attorney at law. However, the present statute

does require a county attorney to be "learned in the law." It is not stated therein by what means, or by whom, such determination of qualification is to be made. Apparently Minnesota is the only state in which it is not forbidden, either by decision of the courts or by statute, that a person who is not a member of the bar in good standing is eligible to the office of prosecuting attorney.

This is the first headnote of the case of *Enge* v. *Cass*, 148 N. W. 607 (N.D., 1914): "In order to be eligible to hold the office of state's attorney, the incumbent must be duly licensed to practice as an attorney and councelor at law in the courts of this state. While no express requirement to such effect is contained either in the Constitution or statutes of this state, such is the clear and necessary implication to be deduced from the language employed both in section 173 of the Constitution and in the provisions of the Code prescribing the duties of a state's attorney." In the case of *People ex rel. Livers et al.* v. *Hanson et al.* (Ill., 1919), 125 N. E. 268, it was held that where the state's attorney is disqualified from presenting a petition for leave to file an information in the nature of quo warranto, the assistant state's attorney is also disqualified. In *People* v. *Munson* (Ill., 1925), 150 N. E. 280, the defendant, Munson, was convicted of robbery and was granted a writ of error by the Supreme Court of Illinois. The Court held that the trial court committed reversible error in not sustaining a motion to quash the indictment for the reason that the state's attorney of the county wherein the defendant was convicted was by the records shown not to have been an attorney licensed to practice law in the state of Illinois. It is interesting to note that neither the constitution nor any statute of Illinois requires that the incumbent of the office of state's attorney be licensed to practice law in that state, which is exactly the situation before this Court in this case.

A novel question was presented for decision by the Supreme Court of Illinois in *People ex rel. Elliott, Attorney General* v. *Benefiel* (1950), 91 N. E. 2d 427. The attorney general of that state brought a proceeding of quo

warranto to oust from the office of state's attorney for one of the counties of that state the defendant, Benefiel. The circuit court ousted defendant but the appellate court reversed that finding and held that the defendant's motion to set aside the judgment and further hear and consider the cause should have been allowed. These, briefly, were the facts: On April 6, 1948, defendant was nominated by his party for the office of county attorney and received a certificate of nomination; he completed his law studies in September, 1948, and took the Illinois bar examination in mid-October of that year; before learning of the result of his examination he received a majority of the votes cast for the office at the general election of November 2, 1948, and was issued a certificate of election by the county clerk; on November 7, 1948, five days later, he was notified that he had failed to pass the bar examination which would have qualified him for admission to the Illinois bar; in March, 1949, after the entry of the judgment of ouster, an affidavit was filed in support of the motion to set aside the judgment and grant the defendant a further hearing stating that he had successfully passed the bar examination in March, 1949, and received his license to practice law. It will be observed that the Court's holding in this case that a new hearing be held was based wholly upon the showing that defendant had become eligible to serve in the office of county attorney prior to the appellate action by the Court.

In the very recent case of *State of Indiana ex rel. The Indiana State Bar Association, etc.* v. *Moritz* (Ind., 1963), 191 N. E. 2d 21, the Indiana State Bar Association sought a permanent injunction to restrain the defendant, Moritz, from the practice "of law as a prosecuting attorney". Neither the constitution nor a statute of that state prohibited a person not an attorney at law from holding the office of prosecuting attorney. It is interesting to compare the following language of Article VII, Section 11, of the Indiana constitution with the pertinent provisions of the constitution of this state heretofore quoted: "There shall be elected in each judicial circuit by the voters thereof

a prosecuting attorney who shall hold his office for four years . . .." It is interesting also to compare the statute of this state with the applicable statute of Indiana reciting the duties required of a prosecuting attorney in various fields both civil and criminal. Likewise the contention that the Supreme Court of Indiana did not have jurisdiction of the proceeding before it was dismissed as being untenable. Furthermore the Court stated that, although by statute it was given the power to regulate the practice of law in all courts of that state, such statute was not necessary to vest in such court such power as it was inherent under the constitutional provision by which the powers of government are divided into three separate departments—the legislative, the executive and the judicial. The Court held that although Moritz had been elected to the office of prosecuting attorney he was not entitled to "practice law as prosecuting attorney" and the petition for a permanent injunction to forbid his doing so was granted. For an excellent collection of the authorities in this regard see Vol. 66, No. 2, W. Va. Law Review (Feb., 1964).

Code, 7-4-1, as amended, details the extensive duties of a prosecuting attorney of a county of this state as follows:

"It shall be the duty of the prosecuting attorney to attend to the criminal business of the State, in the county in which he is elected and qualified, and when he has information of the violation of any penal law committed within such county, he shall institute and prosecute all necessary and proper proceedings against the offender, and may in such case issue or cause to be issued a summons for any witness he may deem material. Every public officer shall give him information of the violation of any penal law committed within his county. It shall also be the duty of the prosecuting attorney to attend to civil suits in such county in which the State, or any department, commission or board thereof, is interested, and to advise, attend to, bring, prosecute or defend, as the case may be, all matters, actions, suits and proceedings in which such county or any county

board of education is interested. It shall also be the duty of the prosecuting attorney, when requested by the attorney general, to perform or to assist the attorney general in performing, in the county in which he is elected, any legal duties required to be performed by the attorney general, and which are not inconsistent with the duties of the prosecuting attorney as the legal representative of such county. It shall also be the duty of the prosecuting attorney, when requested by the attorney general, to perform or to assist the attorney general in performing, any legal duties required to be performed by the attorney general, in any county other than that in which such prosecuting attorney is elected, and for the performance of any such duties in any county other than that in which such prosecuting attorney is elected he shall be paid his actual expenses.

"Upon the request of the attorney general the prosecuting attorney shall make a written report of the State and condition of the several causes in which the State is a party, pending in his county, and upon any matters referred to him by the attorney general as provided by law."

It is apparent that a person who is not licensed to practice law in this state could not perform the duties required by this section. Therefore, while the Legislature has not specifically provided that no one other than a practicing attorney may hold the office of prosecuting attorney, the inference is strong from the language just quoted, that they must have assumed that such official must be an attorney licensed to practice his profession in this state. In all of the cases, criminal and civil, in which the state and the people of Fayette County will be vitally interested there will be representing the opposition a capable attorney at law who is a member of the bar of this state. The people of this state and the people of Fayette County are entitled to have an equally capable attorney at law to represent them. Vol. II, Debates and Proceedings of the First Constitutional Convention of West Virginia, p. 565, lends support to this conclusion. The original provision of the Constitution of 1863 was reported out of committee, in part, as follows:

"The voters of every county shall on the day appointed for electing members of the legislature, whenever it may be necessary, elect one sheriff, one prosecuting attorney, one surveyor of lands . . . ." Mr. Parker, of Cabell, moved to delete the reference to "one prosecuting attorney" and proposed to create a district attorney for each of the proposed nine judicial circuits, stating in support thereof, ". . . in the present state of our country, it is impossible in some counties to find a lawyer. . . ." Mr. Van Winkle, opposing such amendment stated, on page 567, ". . . There is nothing . . . to prevent the prosecuting attorney from residing in a different county from that for which he was elected prosecutor. That exception was made on account of the difficulty suggested—that there is not in every county of the State a resident lawyer capable of discharging the duties of that office. . . ."

This Court held in *In re Eary*, 134 W. Va. 204, 58 S. E. 2d 647 (1950), that the right to practice law is not a natural or constitutional right but is in the nature of the privilege or franchise which this Court has the inherent power to grant or refuse. However, the legislature of this state by Code, 30-2-1, as amended, specifically granted to this Court the power to grant or deny an applicant a license to practice law in this state. Furthermore, it is unlawful for any person to appear as attorney at law for another person in a court of record without first having been duly admitted to practice law in this state. Code, 30-2-4, as amended.

It is the judgment of this Court that the respondent, Prowse, is not eligible to hold the office of prosecuting attorney of Fayette County inasmuch as he is not a practicing attorney at law in the court of that county or in any other court of this state. Therefore, the writ of mandamus will issue directing the respondents, the board of ballot commissioners of Fayette County, to remove the name of the respondent, Prowse, from the persons eligible to be placed upon the primary election ballot for the primary election to be held on the 12th day of May, 1964, and directing such respondents to strike or omit his name

from the list of candidates to be voted upon for the office of prosecuting attorney of Fayette County in the democratic primary of May 12, 1964.

*Writ awarded.*

HAYMOND, PRESIDENT, dissenting in part and concurring in part.

As I firmly believe that mandamus is not the proper remedy to compel a county board of ballot commissioners to omit or remove from an election ballot the name of any candidate who has filed and has been certified by the proper authority as a candidate to be voted for in a primary election, I dissent from the holding of the majority of this Court which, adhering to the erroneous and ill considered cases of *State ex rel. Duke* v. *O'Brien,* 145 W. Va. 600, 117 S. E. 2d 353; *State ex rel. Zickefoose* v. *West,* 145 W. Va. 498, 116 S. E. 2d 398; *Adams* v. *Londeree,* 139 W. Va. 748, 83 S. E. 2d 127; and *State ex rel. Pack* v. *Karnes,* 83 W. Va. 14, 97 S. E. 302, instead of the sound and well reasoned cases of *State ex rel. Schenerlein* v. *The City of Wheeling,* 144 W. Va. 434, 108 S. E. 2d 788; *State ex rel. Harwood* v. *Tynes,* 137 W. Va. 52, 70 S. E. 2d 24; and *State ex rel. McKnight* v. *Board of Ballot Commissioners of Wetzel County,* 86 W. Va. 496, 103 S. E. 399, is that mandamus lies and is a proper remedy to accomplish that result. The reasons for my dissent on that phase of this case are the same as those stated in detail and at length in the dissenting opinion filed by me in *State ex rel. Zickefoose* v. *West,* 145 W. Va. 498, 116 S. E. 2d 398. That dissent appears at page 514 of volume 145 of the West Virginia Reports and at page 407 of volume 116 S. E. 2d; and instead of repeating those numerous and specific reasons in this dissent, I here make express reference to that dissenting opinion for a more detailed expression of my views on that question. In addition to such reference, I now reiterate and reemphasize, as one of the main reasons set forth in that dissenting opinion, that it is the basic principle in the law of mandamus, repeatedly recognized and applied by this Court, until recently, that a writ of mandamus will not be awarded to require the

person to whom it is directed to perform an act which by law he is not required or empowered to perform. Until the decisions in two recent cases this principle was consistently recognized, applied and adhered to by this Court, in its decisions in many cases. *State ex rel. Wilson* v. *The County Court of Barbour County,* 145 W. Va. 435, 114 S. E. 2d 904; *State ex rel. Schenerlein* v. *The City of Wheeling,* 144 W. Va. 434, 108 S. E. 2d 788; *State ex rel. Bumgardner* v. *Mills,* 132 W. Va. 580, 53 S. E. 2d 416; *State ex rel. The City of Huntington* v. *Heffley,* 127 W. Va. 254, 32 S. E. 2d 456; *Butler* v. *Compensation Commissioner,* 107 W. Va. 619, 149 S. E. 828; *Pardue* v. *County Court of Lincoln County,* 105 W. Va. 235, 141 S. E. 874; *State ex rel. Kelly* v. *State Road Commission,* 102 W. Va. 88, 134 S. E. 465; *State ex rel. Matheny* v. *County Court of Wyoming County,* 47 W. Va. 672, 35 S. E. 959; *Dempsey* v. *Board of Education of Hardee District,* 40 W. Va. 99, 20 S. E. 811. See also 55 C.J.S., Mandamus, Section 10c; 34 Am. Jur., Mandamus, Sections 62 and 76.

Article 1, Chapter 3, Code, 1931, as amended by Chapter 64, Acts of the Legislature, 1963, Regular Session, (formerly Article 5, Chapter 3, Code, 1931, as amended), which provides for the creation of a board of ballot commissioners for each county and defines in Section 21 (formerly Section 3) the duties of the board, does not, and could not constitutionally, authorize or empower such board to determine the qualification or the eligibility of any candidate to be elected to or hold any public office, which is a judicial question, or to omit or remove the name of any such candidate from the printed ballot. The only duty or authority imposed upon or vested in the board by the statute is to provide printed ballots for every election for public officers, in which the voters or any of the voters within the county participate, and to cause to be printed, on the appropriate ballots, the name of every candidate whose name has been certified to or filed with the clerk of the circuit court of the county in any manner provided for in Chapter 3 of the Code. There being no duty imposed upon the board or authority vested in it to determine the qualification or the eligibility of any can-

didate to be elected or to hold any public office, it may not be required, in a mandamus proceeding, to omit or remove the name of any such candidate from such ballot on the ground that such candidate is not qualified or eligible to be elected to or hold such office, and can not be required in such proceeding to consider or determine any such question.

I do not question the jurisdiction or the authority of this Court to determine, in the exercise of a judicial function, the qualification or the eligibility of a candidate for public office in a proper proceeding; but, in my considered judgment, this Court may not, in a mandamus proceeding, require a board of ballot commissioners to omit or remove from an election ballot the name of a candidate on the ground that he is not qualified to be elected to or is not eligible to hold the office for which he seeks to be a candidate. If the board of ballot commissioners, an administrative agency, can not determine the qualification or the eligibility of a candidate for public office, as the majority opinion seems to concede, I can not agree that this Court in a mandamus proceeding can determine that question for the board and then require the board to comply with the order of the Court and do what it can not do in the first instance. The board of ballot commissioners does not possess and can not be validly vested with judicial power and, of course, can not determine, in the first instance, the judicial question of the qualification or the eligibility of a candidate for public office. In preparing ballots for an election the board of ballot commissioners performs a purely administrative act and this Court, in directing the board how to perform that function and, in effect, in this proceeding performing that function for the board, necessarily exercises administrative rather than judicial power which, by numerous decisions of this Court and by reason of the provisions of Article V, Section 1, of the Constitution of this State, that the legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others, this Court may not do. By its holding the majority, in effect, causes this

Court, in the first instance, to do, for the board of ballot Commissioners, what admittedly the board can not do, and then to direct the board to do what the Court has done for it. With this conclusion I do not agree, and such a legal anomaly I can not accept. The orderly, valid way is for the board to perform the only duty imposed upon it by statute which is to provide printed ballots and cause to be printed on such ballots the name of every candidate whose name has been certified or filed with the circuit clerk in the manner provided by the statute and not to ignore or violate its duty by omitting the name of such person. If the voters select a person not qualified or not eligible to hold the office for which he was a candidate, which does not often occur, his right to be elected or not to be elected or to hold or not to hold such office can promptly and validly be determined in any one of several available proceedings. The fears expressed by the majority that no opposition candidate, public official, or other person, will institute such proceeding are contrary to every day experience in political and governmental matters and in my judgment are completely fanciful and utterly groundless.

Though I emphatically dissent from the foregoing holding, inasmuch as it has been determined by the majority in this proceeding that mandamus is the proper remedy to require the board of ballot commissioners to omit or remove the name of the defendant Prowse as a candidate for the Democratic nomination for the office of Prosecuting Attorney of Fayette County, West Virginia, from the official printed ballots to be used at the Primary Election on May 12, 1964, I concur in the holding of the majority that the defendant Prowse, not being an attorney at law licensed or authorized to practice in the courts of this State, is not qualified to be elected to and is not eligible to hold the office of prosecuting attorney in that county. I would, however, refuse the writ prayed for because, as previously stated, mandamus is not the proper remedy to obtain the relief sought by the petitioner in this proceeding.