TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
|  | : | No. 95-210 |
| of | : | |
|  | : | May 2, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
|  | : | |
| MAXINE P. CUTLER | : | |
| Deputy Attorney General | : | |
|  | : | |

_____

THE ENGINEERS AND ARCHITECTS ASSOCIATION has requested leave to sue in quo warranto to remove William McCarley from his position as general manager of the Department of Water and Power of the City of Los Angeles.

DISPOSITION

Leave to sue in quo warranto to remove William McCarley from his position as general manager of the Department of Water and Power of the City of Los Angeles is denied.

STATEMENT OF FACTS

This application for leave to sue in quo warranto is brought by the Engineers and Architects Association ("Relator"), a California corporation recognized by the City of Los Angeles ("City") as representing professional, technical, administrative, and supervisory employees in the City's Department of Water and Power ("Department"). Relator challenges the City's appointment by its Board of Water and Power ("Board") of William McCarley ("Defendant"), who is not a registered engineer, as the general manager and chief engineer of the Department.

Under the City's Charter ("Charter"), the Department has the power and duty "to construct, operate, maintain, extend, manage, and control works and property for the purpose of

1. 95-210

supplying the City and its inhabitants with water and electric energy. . . ." (L.A. Charter, § 220.)[1]  The Department, including its general manager (§ 80, subd. (a)), is under the control and management of the Board, which is comprised of five commissioners.  (§ 70, subd. (a).)  The general manager, in addition to budgetary duties, has the power and duty to administer the affairs of the Department; appoint, discharge, suspend, and transfer employees of the Department; and exercise further powers as may be conferred upon him by the Board.  (§ 80, subd. (a).)  Section 220 provides that "the general manager of the department shall be the chief engineer of the department and shall have recognized ability and broad experience in hydraulic and electrical engineering and the economics of water and electrical utilities."

The language of section 220 specifying the qualifications of the Department's general manager was incorporated into the Charter in 1924.  At that time and until 1928, the general manager of the Department was William Mulholland, who was not a registered engineer and had no formal education beyond the age of 15.

Defendant began working for the City in 1965 in the Public Works Bureau of Street Lighting where he dealt with the Department in coordinating the installation of lighting facilities.  He has been responsible for the capital improvement program of all City departments and specifically has worked with the Bureau of Engineering on the construction of water reclamation facilities.  He has been a budget analyst for several City departments and has held the positions of assistant city administrative officer, chief legislative analyst, and chief of staff.  His 30 years of City employment have involved various aspects of the operations, policies, and intergovernmental issues affecting the Department.

On July 27, 1994, the Board determined that Defendant had "broad experience in hydraulic and electrical engineering and the economics of water and electrical utilities" and appointed him interim general manager of the Department.  Kenneth Miyoshi, who holds the civil service position of principal power engineer, was appointed senior assistant general manager and acting general manager in Defendant's absence.

ISSUE OF LAW

Is the general manager and chief engineer of the Department required to be a registered engineer?

ANALYSIS

Section 803 of the Code of Civil Procedure provides that an action in quo warranto "may be brought by the attorney general, in the name of the people of this state, upon his own information, or upon the complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . ."

---

[1]All references hereafter to the City's Charter are by section number only.

We will assume for purposes of this application that the position of general manager and chief engineer of the Department constitutes a "public office" within the meaning of Code of Civil Procedure section 803. (See *Coulter* v. *Pool* (1921) 187 Cal. 181, 186-187; *Nussbaum* v. *Weeks* (1989) 214 Cal.App.3d 1589, 1595-1596; 67 Ops.Cal.Atty.Gen. 409, 412-413 (1984); 24 Ops.Cal.Atty.Gen. 188, 189 (1954); but see *Neigel* v. *Superior Court* (1977) 72 Cal.App.3d 373; *Main* v. *Claremont Unified School Dist.* (1958) 161 Cal.App.2d 189; *Schaefer* v. *Superior Court* (1952) 113 Cal.App.2d 428; 76 Ops. Cal.Atty.Gen. 244 (1993); 65 Ops.Cal.Atty.Gen. 316 (1982); 40 Ops.Cal.Atty.Gen. 228 (1962); 26 Ops.Cal.Atty.Gen. 29 (1955); 19 Ops.Cal.Atty.Gen. 119 (1952).)[2]

In 64 Ops.Cal.Atty.Gen. 42, 45 (1981), we stated with respect to the interpretation of city charters generally:

> "In interpreting the charter provision at issue, the same principles of construction are applicable as are applied in interpreting the Constitution or general laws. [Citation.] Accordingly, the ordinary and usual import of the language used must be given effect [citations], with consideration given to the document as a whole in order to ascertain the intent and purpose of its individual provisions. [Citations.]"

Applying these principles of construction here, we find that the word "engineer" is ordinarily defined as "a person who is trained in or follows as a calling or profession a branch of engineering (as civil, military, electrical, mining, structural or sanitary engineering) in some jurisdictions legally restricted in technical use to a person who has completed a prescribed course of study and complied with requirements concerning registration or licensing." (Webster's New Internat. Dict. (3d ed. 1971) p. 752.) The word "chief" is commonly defined as "accorded highest rank, office or rating (executive)." (*Id.,* at p. 387.)

It is evident that as used in section 220 of the Charter, "chief engineer" is a title rather than a technical term restricted to a person who is registered as an engineer. Had the framers of the Charter intended the Department's general manager to be a registered engineer, they could easily have expressed such a requirement. (See *Benguit* v. *City of Los Angeles* (1971) 15 Cal.App.3d 621, 627.) For example, the Charter requires the city attorney to be qualified to practice in all courts (§ 41 (1)), and the city engineer is required to be a civil engineer (§ 49). On the other hand, and similar to the position in question, "[t]he chief administrative officer of the Fire Department shall be known as the Chief Engineer of the Fire Department" (§ 134; see also *Unified Firefighters of Los Angeles* v. *City of Los Angeles* (1991) 231 Cal.App.3d 1576, 1578), without requiring the person to be a registered engineer. Thus, when we look to the qualifications of other City officials contained in the Charter, it becomes clear that the words "chief engineer" in section 220 do not require the general manager of the Department to be a registered engineer. (See *Lungren* v. *Davis* (1991) 234 Cal.App.3d 806, 823.)

Moreover, when the "chief engineer" language of section 220 was incorporated into the Charter, the general manager of the Department was not a registered engineer. He continued in his

---

[2]If the position does not constitute a public office for purposes of Code of Civil Procedure section 803, the Relator's remedy, if any, to have Defendant removed from the position would be other than by way of a quo warranto proceeding.

position for an additional four years before retiring. Under such circumstances, we may apply the rule of construction that a contemporaneous administrative construction of a city charter amendment may be relied upon to resolve any ambiguities. (See *Social Services Union* v. *City and County of San Francisco* (1991) 234 Cal.App.3d 1093, 1101; *DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 17-19; see also *Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 460; *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1388-1389; *Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855, 866; *Industrial Indemnity Co.* v. *City and County of San Francisco* (1990) 218 Cal.App.3d 999, 1009.)

In a 1965 informal opinion (Cal. Atty. Gen., Indexed Letter, No. IL 65-145 (Aug. 31, 1965)), we concluded that the director of city planning for the City of Oakland need not be a registered engineer. We stated:

"Oakland is a chartered city having availed itself of complete home rule in matters of municipal affairs as permitted by article XI, section 6 of our constitution (Oak. ch. § 49(a)). Though we were unable to find a case directly so holding, it would seem to follow that Oakland may establish whatever public offices it desires, and establish the qualifications for such offices (see *Stahn* v. *Klein*, 179 Cal.App.2d 512 (1960); *O'Neill* v. *Williams*, 53 Cal.App.1 (1921)).

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . the job classification specifications for the position of Director of City Planning specify as `Employment Standards' that `Qualifications must include a combination of professional experience in city planning, appropriate graduate level academic training, and recognized professional leadership, which, taken in total, are sufficiently comprehensive to assure effective performance under only general direction'. . . ."

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Clearly, then, there is no requirement imposed by the City of Oakland that the Director of City Planning be a registered civil or professional engineer. . . ."

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"In answer to the policy question that a director of planning should be a licensed engineer, we note that section 65361 of the Government Code permits a planning commission to `appoint the officers and employees it deems necessary for its work' and section 65362 of the code permits the commission to `employ or contract with planning consultants and <u>other</u> <u>specialists</u> for such services as it requires.' (Emphasis added.) Thus, a planning commission may hire or contract with engineers if their planning work necessitates the practice of engineering. And apparently this is exactly what the Legislature has contemplated for many years. The predecessor to section 65361 and 65362 in our local planning laws provided from 1927 to 1937 that

the commission could `contract with architects, city planners, <u>engineers</u>, and other consultants' (emphasis added). In 1937 the present wording was adopted. (See Stats. 1927, ch. 874, p. 1900-01; Stats. 1929, ch. 838, p. 1806-07; Stats. 1937, ch. 665, p. 1820.) And as stated to us in a letter from the City Attorney of Oakland, `[T]here are approximately 20 registered civil engineers employed by the City in its Street and Engineering Department' (who presumably would be available to the Planning Commission or Director of Planning if engineering services were required.)."

Our 1965 informal opinion relied upon several cases supporting the conclusion that a city or county director of planning need not be a registered engineer unless such qualification was specifically required by charter or statute. (See *Hard* v. *County of Plumas* (1950) 35 Cal.2d 577; *Carter* v. *Com. on Qualifications* (1939) 14 Cal.2d 179; *People* v. *Dorsey* (1867) 32 Cal. 296.)

Consistent with our prior opinion, we find here that Defendant need not be a registered engineer in order to be the Department's general manager. The Charter requires only that the general manager "shall be the chief engineer . . . and shall have recognized ability and broad experience in hydraulic and electrical engineering and the economics of water and electrical utilities." (§ 220.) It does not specify the qualification of being a registered engineer. The Board administratively determined that Defendant's 30 years of City employment in working with the Bureau of Engineering and for the Public Works Bureau of Street Lighting, among other duties, met the Charter qualifications.

Nothing in state law warrants a contrary conclusion. (See 63 Ops.Cal.Atty.Gen. 24, 24-29 (1980); 58 Ops.Cal.Atty.Gen. 278, 279-281 (1975).) The Professional Engineers Act (Bus. & Prof. Code, §§ 6700-6780.84) regulates the practice of civil, electrical, and mechanical engineering and uses the titles "consulting engineer," "professional engineer," "registered engineer," and "engineer-in-training." (Bus. & Prof. Code, §§ 6700, 6704.) It defines several of these terms (Bus. & Prof. Code, §§ 6701-6702.2) and provides those using certain titles must be registered with the state (Bus. & Prof. Code, § 6704). The term "chief engineer" is not contained in the statutory scheme; we have found no requirement that a person must be registered with the state to use such title.

We conclude that the term "chief engineer" as used in section 220 of the Charter does not require the general manager of the Department to be a registered engineer. Accordingly, the application herein does not raise a substantial issue of law or fact which should be judicially resolved; it would not be in the public interest to grant leave to sue. (See, e.g., 77 Ops.Cal.Atty.Gen. 7, 8 (1994).) Relator's application for leave to sue in quo warranto to remove Defendant from his position as general manager of the Department is denied.

* * * * *