STATE *ex rel.* JOHN GENGO

*v.*

MAYOR H. H. CUDDEN, *et al.*, AS THE CITY COUNCIL OF THE CITY OF LOGAN *and* BOARD OF CANVASSERS, *etc.*, *and* EARL JARVIS

(No. 12831)

Submitted May 20, 1969.          Decided June 24, 1969.

W. *Bernard Smith,* for relator.

*Zane Grey Staker,* for respondents.

BROWNING, JUDGE:

Petitioner, John Gengo, filed his petition in this Court on April 22, 1969, praying for a writ of mandamus commanding the respondents, the Board of Canvassers of the City of Logan, to reconvene the Board of Canvassers, revoke a certificate of election issued to the respondent, Earl Jarvis, to review all paper ballots cast in the city election for the City of Logan on April 1, 1969, and to then declare the results of said election or, in the alternative, to order a new election to be held in accordance with law. The petition alleges the identity of the respondents as the Board of Canvassers for the City of Logan, identifies the respondent Jarvis as a republican candidate for the office of city councilman at the general election held for the City of Logan on April 1, 1969, and the petitioner Gengo as the democratic candidate for that office and alleges that, if the respondent Board of Canvassers had properly performed their duties, the petitioner would have been elected. The petition further alleges that the primary election for the City of Logan was held on March 11, 1969, and on March 17, 1969, the respondent Board of Canvassers met and certified the nominees for the democratic and republican parties for the general election to

be held on April 1, 1969; thereafter the respondents ordered paper ballots to be printed for the purpose of absentee voting and for challenged ballots containing the name of Russell Baumgardner rather than the respondent Jarvis as the republican nominee for the office of city councilman; the ballot commission of the City of Logan was duly organized and functioning but no names of candidates were certified to such ballot commission nor did the ballot commission order said ballots as required by law; on March 26, at the instance of the respondent Jarvis and others the Circuit Court of Logan County entered an order requiring the Board of Canvassers to reconvene and to count certain ballots; pursuant to that order the Board of Canvassers met on the evening of March 26, 1969, proceeded to count the ballots as directed and on March 27, 1969, certified the respondent Jarvis as the republican nominee; and that new ballots containing the name of Jarvis were printed on March 26, 1969, upon the order of the city attorney and city clerk of the City of Logan without a meeting of the Board of Ballot Commissioners and prior to the official action of the Board of Canvassers in certifying the results of the primary election, all of which was in violation of law. All of said paper ballots with the exception of seven were challenged, the list thereof being attached to the petition as petitioner's Exhibit "A," and the seven unchallenged ballots were cast by absentee voters and placed upon the voting machines but were replaced in the individual envelopes identifying the voters casting the ballots and are identifiable with certainty, a list thereof being attached to the petition as petitioner's Exhibit "B." It is contended that all such ballots listed in the exhibits are void under the provision of Code, 3-1-21, as amended, and it became the duty of the Board of Canvassers to refuse to count such ballots and to subtract such ballots from the total shown on the voting machines but that, in violation of such duty, the respondent Board of Canvassers proceeded to count such ballots; that the ballot

labels used upon the voting machines were not ordered to be printed according to law and that such ballot labels are void; and had the respondent Board of Canvassers properly performed their duties the petitioner would have been elected to the office of city councilman for the City of Logan.

This Court granted a rule to show cause why the writ should not issue as prayed for on April 28, 1969, returnable before this Court on May 6, 1969, at which time the respondents appeared and answered admitting the general allegations of the petition but denying that any violation of law occurred. The answer asserts that even if the respondent Board of Canvassers improperly counted all votes cast upon paper ballots, the rejection of such ballots would not change the result of the election, the total vote as finally certified by the canvassing board being 783 for Jarvis and 736 for Gengo, petitioner; the vote recorded on the voting machines was 707 votes for Jarvis and 704 for Gengo; that of the seven unchallenged absentee ballots, three of such ballots were from the first printing containing the name of Baumgardner and Gengo received all three of these votes; the other four unchallenged paper ballots were of the second printing containing the name of Jarvis and, of these four, one vote was cast for Gengo and three for Jarvis, thus subtracting these votes would result in the total vote of 704 for Jarvis and 700 for Gengo. The answer further asserts that the Board of Ballot Commissioners of the City of Logan fully performed their duties with reference to the preparation of the ballots and the conduct of the election. Attached to the answer as exhibits are the affidavits of Helen Harmon, Fred Thompson and Roscoe Spence. Helen Harmon stated that she is the city clerk of the City of Logan and, as such, ex officio chairman of the Board of Ballot Commissioners for the City of Logan, the other two members being Mr. Fred Thompson, republican, and Mr. Garland Counts, democrat; following the primary election of March 11, 1969, Logan City Council sitting as a canvassing board

certified the results of that election and among other nominees certified Russell L. Baumgardner as the republican nominee for city council; Jarvis, a defeated candidate, instituted a mandamus proceeding in the Circuit Court of Logan County on March 20, 1969, and that the ballot commissioners were aware that if Jarvis should prevail he would secure the nomination previously certified as having been won by Baumgardner; that on March 17, 1969, she conferred with the other ballot commissioners with regard to the printing of paper ballots, at which time they discussed the pending mandamus proceeding and the situation which would arise if Jarvis prevailed, but decided to have the ballot printed showing the name of Baumgardner. "It was entirely understood between me, Mr. Thompson and Mr. Counts that I should give the order for the printing of the ballots, since I was City Clerk and, as such, ex officio Chairman of the Ballot Commission." She ordered the printing of 500 ballots containing the name of Baumgardner which were delivered to her office on March 19, 1969, and the mandamus proceeding of Jarvis was filed the next day; on March 26, 1969, the Circuit Court entered an order requiring the Board of Canvassers to reconvene and count certain votes which she and the other ballot commissioners knew would result in the nomination of Jarvis; on the afternoon of March 26, 1969, she informed the printer that new ballots would be needed and also ballot labels for the voting machines and requested that they be ready on the morning of March 27; the Board of Canvassers reconvened at 7:30 o'clock on the evening of March 26, 1969; the canvassing board proceeded thereafter to recount the ballots in accordance with the mandate of the Circuit Court and officially "filed" the results; on the morning of March 27, she and the other two ballot commissioners examined the new ballots, began using them in connection with absentee voting and such ballots were used thereafter; also on the morning of March 27 she placed the order with the printer for the ballot labels.

Fred Thompson, republican ballot commissioner for the City of Logan, in his affidavit corroborated Harmon as to his discussion with her on March 17 and stated that he had talked to the democratic commissioner Garland Counts and all agreed to have the ballots printed as originally certified and in the event that Jarvis prevailed the ballot would have to be reprinted; that all of the ballot commissioners knew that the mandate of the Circuit Court would result in requiring Jarvis' name on the ballot; and, that while he was not there when the second set of ballots was delivered by the printer, he inspected them on March 27 and "saw that the new ballot which Helen Harmon had had printed was in all respects correct as to format." Roscoe Spence, the owner of a newspaper publishing business and printing office stated that he knew the members of the Board of Ballot Commissioners and while he had never dealt with either Thompson or Counts he had previously received orders from Harmon for the printing of ballots for city elections; for the primary election Miss Harmon gave the order and the ballots and ballot labels were printed as requested; as to the ballots for the general election, Miss Harmon placed an order for the printing of 500 ballots and the necessary labels which he printed and delivered to Miss Harmon; thereafter in the late afternoon of March 26 he received a call from Miss Harmon informing him that the ballots were going to have to be reprinted and that she would need ballots the first thing the next morning; he also received a call from the city attorney of Logan inquiring as to his position with regard to reprinting the ballots and explaining that the Circuit Court order had the effect of replacing Baumgardner with Jarvis; he reprinted the ballots with Jarvis' name thereon; the canvassing board was to meet at about 7:00 o'clock on that date and he delivered the ballots to Miss Harmon at that time. On March 27, he appeared at the office of Miss Harmon and arrangements were made for the publication of a sample ballot and for the printing of machine labels.

The case was continued to May 20, 1969, to allow the parties to take depositions of witnesses pursuant to Rule 9 of the rules of this Court and a motion was also made at the time to strike the affidavits filed by the respondents with their answer for the reason that petitioner was not given notice of the taking of such or granted the right to cross-examine. On May 20, the parties appeared and petitioner filed a replication to the respondents' answer in which the petitioner admits that if *all* paper ballots are disallowed the petitioner cannot be certified as elected to the office of city councilman but asserts that he is entitled to such office if only those votes cast upon paper ballots ordered on the second printing are declared void; that it appears from the exhibits that the ballots containing the name of Jarvis were printed prior to the meeting of the Board of Canvassers and before any certification of the name of Jarvis was made to the Board of Ballot Commissioners and that none of the paper ballots used on the 27th, 28th and 29th of March were proper ballots authorized by the Board of Ballot Commissioners in accordance with law. Attached to the replication as exhibit is a copy of the mandate of the Circuit Court of Logan County requiring the Board of Canvassers to reconvene, cancel the certificate of returns previously issued, count the ballots of certain named persons and to certify the returns in accordance thereto; also filed as exhibits are the proceedings upon the canvass and the recount.

Code, 3-1-21, as amended, relating to the printing of ballots and the authority and responsibility of a board of ballot commissioners, applies to the board of ballot commissioners of a city election. These are the two pertinent sentences of that section: "The printing of the ballots, and all other printing caused to be done by the board of ballot commissioners, shall be contracted for with the lowest responsible bidder. Ballots other than those caused to be printed by the respective boards of ballot commissioners, according to the provisions of this chapter, shall

not be cast, received, or counted in any election." Apparently the sole reliance for the granting of the writ in this case by counsel for the petitioner is his contention that that language is not only clear and unambiguous but that it is mandatory and that the evidence herein shows that the board of ballot commissioners did not comply therewith.

There can be no doubt about the fact that no official or person other than the board of ballot commissioners has the authority to place the names of eligible candidates on a ballot. *State ex rel. Summerfield* v. *Maxwell,* 148 W. Va. 535, 135 S. E.2d 741. This Court also held in the *Maxwell* case and in many others cited in the opinion thereof that mandamus would lie to require a board of ballot commissioners to place upon a ballot a candidate judicially determined to be entitled to be a candidate in an election or to remove from a ballot the name of a candidate that was ineligible for nomination or election. There can be no doubt that this statute is mandatory in the sense that members of a board of ballot commissioners may be required by mandamus to discharge their duties and to discharge them, to quote a word from the *Maxwell* opinion, "legally." Furthermore, there cannot be much question it would seem that if two ballots were prepared, one by the board of ballot commissioners and another by some other official or citizen without official status that in the absence of a holding to the contrary by a court of competent jurisdiction the names upon the ballot of the board of ballot commissioners would prevail. But there is no contention in this case and the evidence is wholly lacking to show that there was more than one ballot or that the names which were placed upon the ballot and voted for in the Logan city election were not the candidates either nominated by their respective parties in the primary election or placed on the general election ballot in compliance with a writ of mandamus awarded by the Judge of the Circuit Court of Logan County.

It is important at this point to refer to the time element. Sometime, the exact date not appearing of record, prior to March 20 five hundred paper ballots and a sufficient supply of voting machine labels were caused to be printed apparently by the board of ballot commissioners or at least at the instance of its chairman. Those ballots and those labels contained the names of the republican nominee for mayor and the five republican nominees for city council and the democratic nominee for mayor and the five democratic nominees for city council.

Between March 20 and March 26, apparently without objection by anyone, voters who expected to be away from the city of Logan on April 1, election day, voted absentee ballots. On Wednesday, March 26, at about 2:30 o'clock p.m. the Judge of the Circuit Court of Logan County granted a writ of mandamus directing that one of the republican nominees for council, Baumgardner, be replaced by one Jarvis, the court having determined in that proceeding by a consideration of valid absentee ballots cast in the primary election that Jarvis received more votes than Baumgardner. Thus, a somewhat complex problem was presented with the general election only five secular days away. Absentee voting, which began on March 20, could legally continue through Saturday, March 29. It is the action of the Board of Ballot Commissioners or lack of it in that emergency that the petitioner here asserts resulted in the printing of absentee ballots and voting machine labels that were absolutely void and therefore: (a) none of the absentee ballots voted after the 26th should be counted and (b) none of the votes cast on election day should be counted because of the same alleged invalidity of the voting machine labels.

A careful review of the depositions in this case shows that from the moment the writ of mandamus was issued on the afternoon of the 26th the following transpired: Edward Eiland, attorney for the city of Logan, called Helen Harmon, clerk of the city of Logan (an office that

is synonymous in other cities with recorder), and told her that as a result of the circuit judge's decision in the mandamus case it was necessary that new paper ballots for absentee voting and new voting machine labels to be used on election day be printed. Mr. Eiland also called Roscoe Spence of the Logan News who had printed the other ballots and voting machine labels and told him in substance what he had informed Harmon. Under the charter of the city of Logan the clerk is ex officio chairman of the board of ballot commissioners, her authority approximating that of both the clerk of the county court and the clerk of the circuit court in county and state elections. The evidence shows that during that afternoon Harmon did call Spence and placed an order for five hundred ballots and the necessary voting machine labels. The writ issued by the circuit court on that crucial afternoon did not, of course, direct the clerk or the ballot commissioners to take any name off the ballot or put another name in its place. The purport of that writ was to direct the board of canvassers to reconvene, declare Jarvis the winner rather than Baumgardner and "certify," or "file," that finding to, or with, the City Clerk, Harmon.

By the charter of the city of Logan the city council sits as a board of canvassers in the same manner that the members of the county court serve in a similar capacity in county and state elections. At the time the new ballots and new voting machine labels were ordered on that afternoon the board of canvassers had not reconvened to perform their duties as directed by the circuit court. They did not meet until 7:30 o'clock on the evening of that day when they did "certify" Jarvis rather than Baumgardner as being one of the republican nominees for the city council and, according to the depositions and exhibits in this case, "filed" the new amended list of nominated candidates with the clerk of the city of Logan. Spence testified that he was already printing ballots and that he delivered the ballots to Harmon the evening of

the 26th. The voting machine labels were delivered to the clerk's office at City Hall on the morning of Thursday, March 27.

Although Harmon may be the ex officio chairman of the Board of Ballot Commissioners, she is not a majority thereof inasmuch as there are two other commissioners, one a republican selected by the city republican executive committee whose name was Thompson and a democrat named Counts who had been selected by the city democratic executive committee. Counts testifies to the effect that there never was a meeting of the Board of Ballot Commissioners on Wednesday the 26th or thereafter for the purpose of formally taking Baumgardner from the ballot and replacing him with Jarvis. He further stated that at approximately 9:30 a.m. on Thursday morning the 22nd he was called to the clerk's office "for the purpose of signing ballots." He stated that he examined the paper ballots, counted them and found that they complied with the court's order by replacing Baumgardner with Jarvis and that thereafter and until absentee voting ended on the 29th he signed all of the ballots that were voted. He admitted further that he met with the other two ballot commissioners at the place where the voting machines were stored and examined the labels thereon, that being the new labels, both before and after the election of April 1st. Mr. Counts was asked later on recross examination if he had any objection at any time to the ballots or labels whereupon counsel for the petitioner, Mr. Smith, stated: "We will stipulate that. Names were correct." He further stipulated that the ballots and labels were correct and stated, "The only objection is the printing of them, who did it."

The witness Harmon was asked this question on cross-examination and made this answer: "Did [you] have anything from the Board of Canvassers, paper, verbal, or otherwise showing that Earl Jarvis was the nominee of the Republican party? . . . A. No, I didn't." She stated, however, that there was an understanding be-

tween her, Thompson and Counts, the other commissioners, that if the judge ruled that Jarvis was nominated rather than Baumgardner that it would be necessary to have new ballots and new labels printed.

Thompson, the republican ballot commissioner, testified that "we was all in agreement," meaning he, Harmon and Counts, that if Jarvis got on the ticket in place of Baumgardner, the chairman Harmon would have to have ballots printed. Counts was not called in rebuttal to deny any of the testimony of Harmon or Thompson in this respect. While it would appear that most of the conferring between the commissioners was by telephone, Thompson who was the chief of the Logan Fire Department and apparently was stationed in the same building as the clerk stated that he went "up" to the office of the clerk Harmon and suggested that five hundred new ballots should be printed and that she agreed to that suggestion.

As heretofore stated, the testimony is clear that five hundred ballots were ordered and received on Thursday morning the 27th. It is not at all clear, inasmuch as there are only five voting precincts in the City of Logan and since absentee balloting had continued from the 20th of March through a portion of the 26th, why with only three days of absentee balloting left it was necessary to have five hundred ballots printed for that purpose.

In view of the exigent situation that prevailed on Thursday, March 26, and from a careful review of the depositions of the witnesses, this Court is of the opinion that the pertinent provisions of Code, 3-1-21, as amended, were complied with. In this regard we give particular credence to the testimony of the chairman and the other two members of the board of ballot commissioners as to what transpired on the morning of the 27th when all state that the ballots were counted, found to be correct in every respect and thereafter all absentee ballots were signed by all three members of the board. Furthermore,

as heretofore stated, all three commissioners examined the labels upon the voting machines prior to as well as after the voting on April 1st and counsel for the petitioner stipulated that the ballots were proper and the labels were proper. This is the second syllabus point of *Morris* v. *Board of Canvassers,* 49 W. Va. 251, 38 S. E. 500: "As to mistakes and irregularities in elections, a distinction exists between those made by the voter and those made by officers of election. In the former case such mistakes and irregularities may often destroy the ballot, while those of officers do not affect the election, if a fair election has been held." Apparently the only exception that this Court has ever made to that rule is where the duly acting clerks of the receiving board have not affixed their signatures to a paper ballot. For a discussion of that question and the citation of prior decisions of this Court see *State ex rel. Patrick* v. *County Court of Hancock County,* 152 W. Va. 592, 165 S. E.2d 822. In *Gibson* v. *Bower,* 137 W. Va. 462, 73 S. E.2d 817, the issue for determination by this Court was whether certain ballots cast for the candidates for commissioner of the county court of Calhoun County at the primary election of May 13, 1952, were valid. In one of the precincts of that county the supply of ballots was exhausted before the closing of the polls and there were other voters desirous of casting their ballots. As may be done in such circumstances a request was made of the clerk of the circuit court for extra ballots to be used at that precinct. There were no official ballots at the clerk's office. There were, however, a number of sample ballots, and the deputy circuit clerk, since the clerk nor either of the regular ballot commissioners of the county was present, struck out the word "sample" and wrote in its place the word "official." These ballots were then voted to such an extent that the outcome of the race between two candidates on the democratic ticket for county court was contingent upon the validity of those ballots. This Court held that the deputy clerk by his action in oblit-

erating the word "sample" and writing thereon the word "official" converted the sample ballots into official ballots and that acting as the deputy of the chairman of the ballot commission he had the authority so to do. If this Court could extend the doctrine of the *Morris* case to cover the facts in *Gibson* v. *Bower* and hold those ballots valid, it is constrained to hold in this proceeding that the ballots and labels which were ordered and printed on the 26th of March and thereafter used by absentee voters and regular voters while the polls were opened on April 1st were valid.

The writ of mandamus will be refused.

*Writt refused.*