412 S.E.2d 231

**STATE of West Virginia, Appellee,**

v.

**Gerald "Red" STALNAKER, Appellant.**

**No. 19946.**

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 1, 1991.
Decided Dec. 6, 1991.

**234**

James C. West, Jr., West & Jones, Clarksburg, for appellant.

Mario J. Palumbo, Atty. Gen., Teresa A. Tarr, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

Gerald "Red" Stalnaker appeals a jury verdict in the Circuit Court of Lewis County, which found him guilty of false swearing on his certificate of candidacy for commissioner of Lewis County. On appeal, Mr. Stalnaker maintains that the jury verdict should be set aside because the evidence was insufficient. Based on a careful review of the evidence presented, we agree with Mr. Stalnaker and reverse the order of the circuit court.

Mr. Stalnaker, a commissioner of Lewis County, lived at Box 5–H, Weston, Hacker's Creek District from approximately June 1984 until his trailer was destroyed by a tornado in June 1989.[1] It is undisputed that between 1984 and 1989, Mr. Stalnaker and his wife used and identified the trailer as their residence. Mr. Stalnaker's trailer was on the back of a commercial lot where several of his businesses, including a car wash, were located. Mr. Stalnaker also owned a farm that was located in a different election district, namely the Collins Settlement District. After the trailer was destroyed, Mr. Stalnaker and his wife moved to their farm while Mr. Stalnaker converted part of the car wash into an apartment and lived there for a period of about 3 months. Mr. Stalnaker and his wife then occupied the apartment to the same extent that they had occupied their trailer.

Mr. Stalnaker's farm was purchased in 1984 and after building a house, Mr. Stalnaker and his wife spent some time at the farm. In 1985 Mr. Stalnaker applied for and received a Homestead Exemption for his farm.[2] Since 1985, Mr. Stalnaker has continued to receive the Homestead Exemption for his farm.

On January 26, 1990, Mr. Stalnaker filed his certificate of candidacy for reelection to the Lewis County Commission and listed Route 3, Box 5 H, Hacker's Creek District, Weston (his apartment) as his residence. The State, alleging that when Mr. Stalnaker filed for reelection, his residence was his farm and not his apartment, indicted Mr. Stalnaker for false swearing on his certificate of candidacy in violation of *W.Va. Code*, 3–5–7 [1990].[3]

> Any person who is eligible to hold and seeks to hold an office ... shall file with ... the clerk of the circuit court, if it be for an office to be filled by the voters of a county or subdivision less than a county, a certificate declaring himself a candidate for the nomination for such office,....
>
> \*   \*   \*   \*   \*   \*
>
> Such announcement shall be signed and acknowledged by the candidate before some officer qualified to administer oaths, who shall certify the same. Any person who knowingly provides false information on said certificate shall be guilty of an offense and shall be punished as set forth in section twenty-three [§ 3–9–23], article nine of this chapter.

---

1. Before June 1984, Mr. Stalnaker lived at Route 1, Box 165, Jane Lew, Hacker's Creek District. Just before the June 1984 primary, Mr. Stalnaker moved into his trailer and filed an amended certificate of candidacy to reflect his change of address.

2. *W.Va.Code*, 11–6B–1, *et seq.* [1983], allows a $20,000 tax exemption for real estate owned by persons who are disabled or who are age 65 or older, who live on the residential property "for more than one-half of the year...." *W.Va. Code*, 11–6B–2(7) [1981]. Note: In 1990, the Legislature amended *W.Va.Code*, 11–6B–1, *et seq.*; however, this case arose before the effective date of the amendments.

3. In 1991, the Legislature amended *W.Va.Code*, 3–5–7. Because this case arose in 1990, *W.Va. Code*, 3–5–7 [1990], is controlling and the section provided in pertinent part:

At trial the State introduced evidence of Mr. Stalnaker's Homestead Exemption and utility bills for both his apartment and farm. In addition, Mrs. Stalnaker testified that she spent a substantial amount of time at the farm. After the jury found Mr. Stalnaker guilty of false swearing and the circuit court declined to set aside the verdict, Mr. Stalnaker appealed to this Court.

### I.

On appeal, the question is whether the evidence is sufficient to show that Mr. Stalnaker falsely swore on his certificate of candidacy that his residence was his apartment in the Hacker's Creek District.

"In West Virginia, the term 'residence' is synonymous with the term 'domicile' for election law purposes." Syllabus Point 7, *White v. Manchin*, 173 W.Va. 526, 318 S.E.2d 470 (1984). *See also, Sturm v. Henderson*, 176 W.Va. 319, 342 S.E.2d 287 (1986); *Irons v. Fry*, 129 W.Va. 284, 290, 40 S.E.2d 340, 343 (1946).

In *White*, we said:

> Domicile is a combination of residence (or presence) and an intention of remaining. If domicile has once existed, mere temporary absence will not destroy it, however long continued.

Syllabus Point 8, *White supra.* Domicile, then, consists of two elements, residence and an intention of remaining.

In the present case, the State presented evidence of only one element, residence or presence, and that evidence showed that Mr. Stalnaker has two residences, his apartment and his farm. Mr. Stalnaker's apartment is located next to his commercial enterprises, which include an electrical business, a rental building and a furniture store, which was formerly a car wash. The utilities for the apartment are included with Mr. Stalnaker's businesses and his utility usage was below the average for residential customers.

Mr. Stalnaker's farm is classified as residential property and since 1985, Mr. Stalnaker has received a Homestead Exemption for the farm. Monongahela Power Company, the only utility to provide information on the farm, reported that the farm, a residential account, had consumed electricity at a rate above the industry's average between June 1988 and July 1990.

Both the apartment and the farm have private living quarters, including a kitchen and bath. The farm has more land and storage facilities. All of Mr. Stalnaker's mail is delivered to the apartment's address. Mr. Stalnaker's operator's license, car registration, voter registration, indeed even the Homestead Exemption, list the apartment's address.

Mrs. Stalnaker testified that although she spends a substantial portion of her time at the farm, she spends about three nights a week at the apartment. The evidence also showed that although Mr. Stalnaker is usually at his apartment during the day, he travels to his farm most evenings. Most of the witnesses testified that they meet with Mr. Stalnaker at his apartment during the day.

Based only on this evidence, the State maintains that under the election law, Mr. Stalnaker's farm was his residence. However, the State failed to present any evidence concerning the second element of domicile, namely the intention of remaining.

It is undisputed that before Mr. Stalnaker's trailer was destroyed in 1989, his domicile was his trailer. During the construction of the apartment, which replaced the trailer at the same location, Mr. Stalnaker and his wife lived at the farm. However, once the apartment was completed, Mr. Stalnaker and his wife returned to live, at least part of the time, at the apartment. At most, the State's evidence establishes that Mr. Stalnaker has two residences; however, although a person can live or reside in more than one place, a person can have only one domicile.

In *White, supra,* we discussed a similar circumstance involving a state senatorial candidate, Charles M. Polan, Jr., who had "sleeping quarters" in the district where he sought election and an apartment outside the district. *White, id.* 173 W.Va. at 539, 318 S.E.2d at 484–85. In *White*, we first

examined the physical character of each residence and then examined the record to see if there was an intention to change the domicile. In Syllabus Point 4, *Shaw v. Shaw*, 155 W.Va. 712, 187 S.E.2d 124 (1972), we said:

> The important facts in determining the domicile of a person who has more than one residence are the physical character of each, the time spent and the things done in each place, and whether or not there is an intention to return to the original domicile.

*In accord*, Syllabus Point 9, *White, supra*. We also noted that it is a well established rule that, "[a] domicile once acquired is presumed to continue until it is shown to have been changed." *White, id.* 173 W.Va. at 542, 318 S.E.2d at 486 (quoting *Mitchell v. United States*, 88 U.S. (21 Wall. 350) 350, 353, 22 L.Ed. 584 (1874).

■ The intention to change a domicile, "which requires an intent not to return to the old domicile, is to be inferred from the facts and circumstances, not from self-serving representations." *White, id.* 178 W.Va. at 542, 318 S.E.2d at 486. The party alleging a change of domicile has the burden of proof. In *White*, we found that the candidate did not show an intention to abandon his former domicile, a fully furnished suite for "sleeping quarters."

■ In the present case, it is undisputed that Mr. Stalnaker's domicile was his trailer until a tornado destroyed it in 1989. After Mr. Stalnaker constructed an apartment on the trailer's site, he returned to live there, at least part of the time. In Syllabus Point 10, *White supra*, we said:

> "A change in residence for convenience in working conditions does not, without more, indicate a change in domicile." Syl. pt. 3, *Shaw v. Shaw*, 155 W.Va. 712, 187 S.E.2d 124 (1972).

Mr. Stalnaker's change in residence for convenience while he was constructing a replacement for his trailer, does not, without more, indicate a change in domicile. Mr. Stalnaker's construction of an apartment and his presence in the apartment at least part of the time, show his intention of returning to his original domicile.

■ We reiterate in this case that physical residency is a condition for election as a county commissioner along with numerous other local offices including the House of Delegates, the State Senate (*White, supra*), Board of Education (*Sturm, supra*), etc. Therefore, for these local offices the residency requirement must be strictly construed. However, "a different domicile standard applies to ... officials" holding statewide or federal offices. *White, supra* 173 W.Va. at 538, 318 S.E.2d at 482, n. 5. For such federal or statewide officials, current residency is not a condition for election. Indeed, service of process for a member of the Board of Public Works, which includes the governor, secretary of state, auditor, superintendent of free schools [state superintendent of schools], treasurer, attorney general and commissioner of agriculture (*W.Va.Code*, 5–4–1 [1923]), is proper in Kanawha County because it is the officials' "usual place of abode." *W.Va.Code*, 56–2–1 [1923]. However, unless federal or statewide elected officials change their domicile as shown by changing their voter registration, these officials are entitled to file for office from any county wherein they have had a residency before attending to their official duties in Washington, D.C. or Charleston. *See White, supra* 173 W.Va. at 536, 318 S.E.2d at 482, n. 5.

■ Because the State failed to present any evidence of Mr. Stalnaker's intent to change his domicile, we find that the State failed to establish that the farm was Mr. Stalnaker's domicile. Therefore, the State failed to prove that Mr. Stalnaker falsely swore on his certificate of candidacy.

For the above stated reasons, the decision of the Circuit Court of Lewis County is reversed.

Reversed.