571 S.E.2d 333

**STATE of West Virginia ex rel. Larry R. SANDY, Petitioner**

v.

**The Honorable Gary J. JOHNSON Sitting by Designation as Judge of the Circuit Court of Webster County, Victor McClure, and Karen L. Morris, Circuit Clerk of Webster County, Shirley Hamrick and Roger Holcomb, Ballot Commissioners of Webster County, Respondents.**

No. 30784.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 2002.

Decided Nov. 8, 2002.

---

William R. Wooten, the Wooten Law Firm, Beckley, for Larry R. Sandy.

William C. Garrett, Garrett & Garrett, Gassaway, for Victor McClure.

Michael C. Doss, Marlinton, for Ballot Commissioners.

## PER CURIAM:

The relator, Larry R. Sandy, seeks a writ of prohibition from this Court against the Honorable Gary L. Johnson, sitting by designation as Judge of the Circuit Court of Webster County, in order to prohibit the enforcement of the circuit court's order directing the Ballot Commissioners of Webster County to remove Larry R. Sandy's name from the official ballot for the November 5, 2002, general election as the Democratic candidate for the office of County Commissioner. The circuit court's order was based on its finding that Sandy was ineligible to be a candidate for the office of county commissioner due to his failure to meet the residence requirement for that office.

On September 25, 2002, this Court entered an order by which a writ of mandamus, as moulded, was awarded.[1] Specifically, the Court directed the ballot commissioners of Webster County to include the name of Larry R. Sandy on the ballot as Democratic candidate for the office of county commissioner of Webster County. The Court noted in its order that the syllabus points adjudicated would be prefixed to a written opinion which would follow in due course.

## I.

## FACTS

Webster County is divided into three magisterial districts: the Northern District, the Central District, and the Southern District. Under Article IX, Section 10 of the State Constitution and W.Va.Code § 3-5-4 (1991),[2] no two county commissioners shall be elected from the same magisterial district. During the 2002 election, the person elected to the Webster County Commission is required to be a resident of the Southern District because incumbents from the Central and Northern Districts have previously been elected to terms ending in 2004 and 2006.

On January 14, 2002, the relator, Larry R. Sandy, filed a "Candidate's Certificate of Announcement for 2002 Elections" in the office of the Clerk of the Circuit Court of Webster County in accordance with W.Va.Code § 3-5-7 (1998).[3] On that certificate, Sandy indi-

---

1. Although this case was brought and granted as a petition for a writ of prohibition, we choose to treat it as a writ of mandamus action. *See State ex rel. Ranger Fuel Corp. v. Lilly,* 165 W.Va. 98, 100, 267 S.E.2d 435, 436 (1980); *Carr v. Lambert,* 179 W.Va. 277, 278, n. 1, 367 S.E.2d 225, 226 n. 1 (1988), *holding modified on other grounds by State v. Macri,* 199 W.Va. 696, 487 S.E.2d 891 (1996); and *State ex rel. Conley v. Hill,* 199 W.Va. 686, 687 n. 1, 487 S.E.2d 344, 345 n. 1 (1997), *overruled on other grounds by State v. Hulbert,* 209 W.Va. 217, 544 S.E.2d 919 (2001).

2. According to Article IX, Section 10 of the Constitution of West Virginia:

    The commissioners shall be elected by the voters of the county, and hold their office for a term of six years, except that at the first meeting of said commissioners they shall designate by lot, or otherwise in such manner as they may determine, one of their number, who shall hold his office for a term of two years, one for four years, and one for six years, so that one shall be elected every two years; but no two of said commissioners shall be elected from the

same magisterial district. If two or more persons residing in the same district shall receive the greater number of votes cast at any election, then only the one of such persons receiving the highest number shall be declared elected, and the person living in another district, who shall receive the next highest number of votes, shall be declared elected. Said commissioners shall annually elect one of their number as president. The commissioners of said commissions, now in office, shall remain therein for the term for which they have been elected, unless sooner removed therefrom, in the manner prescribed by law.

    W.Va.Code § 3-5-4 (1991) simply provides in relevant part that "[c]andidates for the office of commissioner of the county commission shall be nominated and elected in accordance with the provisions of section 10, article nine of the Constitution of the state of West Virginia[.]"

3. W.Va.Code § 3-5-7 (1998) provides in applicable part:

    Any person who is eligible and seeks to hold an office or political party position to be filled

cated that he was running for county commissioner, and he listed as his current residence an address in the Southern District of Webster County.

In the May 14, 2002, primary election, Sandy received 650 votes which were the most votes received for the Democratic nomination for county commissioner. Victor McClure received 385 votes for that office which was the second highest number of votes.[4] The Webster County Commission, acting in its statutory capacity as the Webster County Board of Canvassers,[5] certified these results.

McClure [6] subsequently filed a petition for a writ of mandamus in the Circuit Court of Webster County in order to test the eligibility of Sandy's candidacy. Sandy filed a motion to dismiss the petition. On August 30, 2002, the circuit court held an evidentiary hearing in order to determine whether Sandy was a resident of the Southern District of Webster County on January 14, 2002, the date he filed for candidacy. Both sides presented witnesses. Sandy testified that he moved from his farm at Bolair in the Central District to Upper Glade in the Southern District on November 2, 2001, so that when he filed for the office of county commissioner in January 2002, he was a resident of the Southern District.

The circuit court granted McClure's petition for a writ of mandamus and directed the Ballot Commissioners of Webster County to remove Sandy's name from the official ballot for the November 5, 2002, general election as the Democratic candidate for the office of

county commissioner.[7] The circuit court stated as the bases for its action:

In deciding the factual question of whether [Sandy] changed his residence from Bolair to Upper Glade before January 14, 2002, the Court FINDS the following facts to be dispositive:

A. [Sandy] spent one-half of his time at Bolair and the other half at Upper Glade;

B. On October 27, 2001, [Sandy] went to the County Clerk's Office and changed his voter registration from his address at Bolair to his address at Upper Glade;

C. Even after [Sandy] claims he moved to Upper Glade, he continued to operate his farm on Excelsior Road, Bolair;

D. The mobile home at Upper Glade was deeded to [Sandy's] wife, Gloria, from her mother, and is titled in her name;

E. [Sandy] admitted that he attempted to change his place of residence so that he could run for County Commissioner from the Southern District;

F. The water bills from the Bolair Public Service District and from Cowen Public Service District show more water usage at the Bolair residence than at the Upper Glade residence for the period of December 15, 2001 to May 14, 2002;

G. Electric usage at the Bolair residence indicate[s] a similar usage in 2002 when compared with the usage for the same billing period in 2001;

H. The telephone bills for the month of February, 2002 for the Bolair residence

by election in any primary or general election held under the provisions of this chapter shall file a certificate of announcement declaring as a candidate for the nomination or election to the office.

    (a) The certificate of announcement shall be filed as follows:

            * * *

    (2) With the clerk of the circuit court, if it be for an office to be filled by the voters of a single county or of a subdivision less than a county[.]

4. McClure is currently a county commissioner and his term expires on December 31, 2002.

5. *See* W.Va.Code § 3–6–9 (1985) and *Poteet v. Cabell County Comm'rs,* 30 W.Va. 58, 3 S.E. 97 (1887).

6. Victor McClure was also named as a respondent in Sandy's petition for a writ of prohibition in this Court.

7. In addition, the circuit court ruled that because McClure failed to contest the election results within ten days after the results were declared, as provided in W.Va.Code §§ 3–7–6 (2002) and 3–7–7 (1963), he was precluded from contesting the results of the election in the mandamus proceeding before the circuit court. Accordingly, the circuit court did not order McClure's name to be placed on the ballot for the general election in the place of Sandy's name.

showed that calls made from [Bolair] totaled 497 minutes, compared with · calls made from [Upper Glade] which totaled only 34 minutes for the same period;

I.  [Sandy] admitted that most of his furniture remains at this house at Bolair;

J.  [Sandy] stated that his farm has been in his family for a hundred years, and that he has lived most of his life at his farm at Bolair;

K.  [Sandy] stated that they still wash their clothes at the Bolair residence because their washer is not hooked up at Upper Glade because the water line leaked and that it was cheaper to take his clothes "home" to Bolair than go to a laundromat; and

L.  The testimony of the witnesses living in the Upper Glade area was confusing as to the question of [Sandy's] residence, which is understandable given the legal definition of residence or domicile. (Citations omitted.)

█ In response, Sandy filed a petition for a writ of prohibition in this Court seeking to prevent the enforcement of the circuit court's order. We issued a rule to show cause. The issue before us is Sandy's eligibility to be a candidate for the office of county commissioner. Our law says that "[t]he eligibility of a candidate for an elective office may be determined in a proceeding in mandamus[.]" Syllabus Point 1, in part, *State ex rel. Summerfield v. Maxwell*, 148 W.Va. 535, 135 S.E.2d 741 (1964). Therefore, we find that mandamus is the appropriate remedy. For the reasons stated below, we granted a writ of mandamus as moulded.

## II.

## STANDARD OF REVIEW

█ It is axiomatic that "[m]andamus is a proper remedy to require the performance of a nondiscretionary duty by various governmental agencies or bodies." Syllabus Point 1, *State ex rel. Allstate Ins. Co. v. Union Public Service Dist.*, 151 W.Va. 207, 151 S.E.2d 102 (1966). Generally,

A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought;

(2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969). In the instant case, however, the writ has been invoked to preserve the right to run for political office. We have held that "[i]n West Virginia a special form of mandamus exists to test the eligibility to office of a candidate in either a primary or general election." Syllabus Point 5, in part, *State ex rel. Maloney v. McCartney*, 159 W.Va. 513, 223 S.E.2d 607 (1976). In special mandamus election cases, "[b]ecause there is an important public policy interest in determining the qualifications of candidates in advance of an election, this Court does not hold an election mandamus proceeding to the same degree of procedural rigor as an ordinary mandamus case." Syllabus Point 2, *State ex rel. Bromelow v. Daniel*, 163 W.Va. 532, 258 S.E.2d 119 (1979). Said another way, "when a writ of mandamus has been invoked to preserve the right to vote or to run for political office ... this Court has eased the requirements for strict compliance for the writ's preconditions, especially those relating to the availability of another remedy." Syllabus Point 3, in part, *State ex rel. Sowards v. County Comm'n of Lincoln Co.*, 196 W.Va. 739, 474 S.E.2d 919 (1996). Basically, "[i]f the relator has a clear legal right to the office claimed by him and from which he is illegally excluded, mandamus is the appropriate remedy to redress his wrong." *State ex rel. Thomas v. Wysong*, 125 W.Va. 369, 372, 24 S.E.2d 463, 465 (1943) (citations omitted). We now proceed to discuss the issue before us.

## III.

## DISCUSSION

█ Sandy seeks to have his name placed on the general election ballot as the Democratic candidate for the office of county commissioner of Webster County. We have recognized that "[t]he right to become a candidate for election to public office is a valuable and fundamental right." *State ex rel. Brewer v. Wilson*, 151 W.Va. 113, 121,

150 S.E.2d 592, 597 (1966) (*quoting* 29 C.J.S. *Elections* § 130 at 377), *overruled on other grounds by Marra v. Zink*, 163 W.Va. 400, 256 S.E.2d 581 (1979). In Syllabus Point 2 of *State ex rel. Billings v. Point Pleasant*, 194 W.Va. 301, 460 S.E.2d 436 (1995), we held that "[t]he West Virginia Constitution confers a fundamental right to run for public office, which the State cannot restrict unless the restriction is necessary to accomplish a legitimate and compelling governmental interest." Sandy was found ineligible below to be a candidate for the office of county commissioner due solely to the circuit court's finding that he is not a resident of the Southern District of Webster County.[8]

▮ This Court has a well-settled body of case law to look to in deciding the issue in this case. We have said that "[i]n West Virginia, the term 'residence' is synonymous with the term 'domicile' for election law purposes." Syllabus Point 7, *White v. Manchin*, 173 W.Va. 526, 318 S.E.2d 470 (1984). "A [person] may live in several different places but he [or she] can have only one domicile. Domicile is a place a person intends to retain as a permanent residence and go back to ultimately after moving away." Syllabus Point 2, *Shaw v. Shaw*, 155 W.Va. 712, 187 S.E.2d 124 (1972). "Domicile is a combination of residence (or presence) and an intention of remaining. If domicile has once existed, mere temporary absence will not destroy it, however long continued." Syllabus Point 2, *Lotz v. Atamaniuk*, 172 W.Va. 116, 304 S.E.2d 20 (1983). Finally, "[t]he important facts in determining the domicile of a person who has more than one residence are the physical character of each, the time spent and the things done in each place, and whether or not there is an intention to return to the original domicile." Syllabus Point 4, *Shaw v. Shaw*, 155 W.Va. 712, 187 S.E.2d 124 (1972).

▮ When this Court weighs the evidence in a disputed residence case, we are mindful that "[a] domicile once acquired is presumed to continue until it is shown to have been changed." *White v. Manchin*, 173 W.Va. 526, 541, 318 S.E.2d 470, 486 (1984) (*citing Hartman v. Hartman*, 132 W.Va. at 735, 53 S.E.2d at 410, *quoting Mitchell v. United States*, 88 U.S. (21 Wall.) 350, 353, 22 L.Ed. 584, 588 (1874)). In addition, where physical residency is a condition for election, "the residency requirement must be strictly

---

8. In the mandamus action below, the circuit court found as a matter of law that "[t]he eligibility of a County Commissioner is deemed to be determined as of the date the candidate files for office." During oral argument before this Court in the instant mandamus action, counsel for McClure cited the case of *Burkhart v. Sine*, 200 W.Va. 328, 489 S.E.2d 485 (1997), in support of this legal proposition.

However, in Syllabus Point 1 of *State ex rel. Brewer, supra,* this Court held:

Under the provisions of Code, 1931, 3–5–4, as amended, a candidate seeking nomination in a primary election for the office of commissioner of a county court must possess, *at the time of the primary election,* the residence qualification defined by the provisions of Section 23 of Article VIII of the Constitution of West Virginia, in order to be legally nominated by the electorate in such a primary election.

(Footnote and emphasis added.) In addition, in *Adkins v. Smith*, 185 W.Va. 481, 485, 408 S.E.2d 60, 64 (1991), we stated, citing *Brewer*, that "[i]n addressing general issues of qualifications of candidates, we have consistently held that where a statute specifies eligibility requirements, a candidate must possess the requisite qualifications for the office he seeks at the time of his nomination."

It seems to us that *Brewer* is more applicable under the present facts than *Burkhart*. In *Burkhart*, the issue was from which of two election districts a candidate for county commission was elected where he lived in one district when he filed and was nominated and, due to redistricting, he lived in another district as the time of the general election. Without reference to Syllabus Point 1 of *Brewer*, this Court held in Syllabus Point 3 of *Burkhart*:

In accordance with W.Va.Code § 3–5–4 and Article IX, § 10 of the West Virginia Constitution, a member of the County Commission is deemed to be elected from the magisterial district in which that person resides on the day that person is elected to serve on the County Commission, that is, the date of the general election. Absent unusual circumstances, a candidate generally resides in the same district on the date of filing in which he or she resides on the date of the election; therefore, a candidate carries that residence with him or her throughout the entire term.

Regardless of the date used, however, we believe that the result in the instant case is the same.

construed." *State v. Stalnaker,* 186 W.Va. 233, 236, 412 S.E.2d 231, 234 (1991). Finally, "[t]he party alleging a change of domicile has the burden of proof." *Id.*

After carefully reviewing the evidence presented in the mandamus action before the circuit court, and attached as exhibits herein, we conclude that Sandy has adduced competent evidence of a change in residence from his farm near Bolair to Upper Glade. Sandy testified in the evidentiary hearing before the circuit court that he has resided at Upper Glade since November 2, 2001, and that he intends to make Upper Glade his residence. According to Sandy, he still works on the farm near Bolair from morning until evening six days a week. His farm tasks include raising cattle, keeping bees, grafting small apple trees to sell, and putting up hay. He further stated that he spent six nights a week at Upper Glade until Mid–April 2002, when he began spending seven nights a week there.[9] Sandy's wife corroborated her husband's testimony and added that she and her husband intend to build a house at Upper Glade.[10] While this Court is cognizant of the fact that the intention to change a domicile "is to be inferred from facts and circumstances, not from self-serving representations[,]" *White v. Manchin,* 173 W.Va. 526, 542, 318 S.E.2d 470, 486 (1984), we believe that there is sufficient evidence to support Sandy's testimony.

This evidence consists of the following. Garel Adamy, a neighbor of the Upper Glade residence testified that he had seen Sandy at Upper Glade "three-fourths of the time" prior to the primary election, including in January 2002. He further testified that he spoke with Sandy at the post office in January 2002, and Sandy informed him that he was going to move into the Upper Glade residence and run for county commission.

Sandy also presented evidence that he receives water, phone, electric, and mail service at his Upper Glade residence. Specifically, an employee of the Bolair Public Service District testified that at least since July 2001, Sandy has received his water bill at Upper Glade. An employee of the Cowen Public Service District, which provides water service to Upper Glade, testified that Sandy became a customer in November 2001. A telephone company employee testified that Sandy received telephone service at the Upper Glade residence on January 9, 2002. Moreover, the claims manager of the insurance company with which Sandy has a homeowner's policy for his Bolair farm testified that Sandy changed his mailing address with the company to Upper Glade on December 31, 2001. Finally, the evidence shows that Sandy changed his voters' registration address on October 29, 2001.[11] We conclude that this evidence proves that Sandy resides at Upper Glade, and that his intention is to remain there. Accordingly, we find that the circuit court clearly erred in finding that Sandy was not a resident of Upper Glade.

As set forth above, the circuit court listed several facts which it found to be dispositive including the physical character of both the Bolair farm and the Upper Glade residence. This evidence showed that the Bolair farm has been in Sandy's family for a hundred years, and that Sandy lived there most of his life. In contrast, the Upper Glade residence is a mobile home deeded to Sandy's wife by her mother a few years ago. While we agree with the circuit court that this one factor weighs against Sandy, we do not believe that this evidence alone negates his showing that he moved his residence to Upper Glade.

Further, we do not agree with the circuit court that its remaining findings are dispositive. The fact that Sandy continues to operate his Bolair farm and spend half of his time

---

9. Sandy explained that until Mid–April 2002, he kept his church clothes at the farm near Bolair and for that reason he spent Saturday nights there.

10. Sandy's wife also testified that she spends much of her time in Webster Springs where she cares for her aged mother.

11. The circuit court found that "[t]he testimony of the witnesses living in the Upper Glade area was confusing as to the question of [Sandy's] residence[.]" After reading the hearing transcript, we agree. Frankly, we find that the eyewitness testimony concerning where Sandy spent most of his time does not shed much light on the issue.

there merely indicates that the Bolair farm is Sandy's workplace. Like many people, Sandy spends numerous hours a day at his workplace and at the end of the day returns to his residence. Also, this Court does not believe that evidence of Sandy's water, electric, and telephone usage at the Bolair farm necessarily demonstrates that he lives at the farm. Instead, this evidence is consistent with Sandy's testimony that he works at the farm from morning until evening, and that he and his wife continue to do laundry at the Bolair farm due to a faulty water line at the Upper Glade residence. Moreover, evidence that most of Sandy's furniture remains at the Bolair farm house was explained by Sandy's testimony that the Upper Glade residence was already furnished when he moved there. In addition, this Court finds Sandy's "admission" that he attempted to change his place of residence so that he could run for county commission from the Southern District to be wholly irrelevant. In order to show domicile, a person need only show residence, or presence, and an intention to remain. The person's motive for changing his or her domicile is simply not pertinent. Finally, we do not find the fact that Sandy, in his testimony, referred at one point to the Bolair farm as "home" to be compelling evidence that it remained his residence. This reference is consistent with the fact that the Bolair farm has been in his family for a hundred years. As noted by Sandy in his petition to this Court, "[v]irtually every West Virginian who has resided here for more than one generation uses the term 'home' to refer to the family home place."

For the reasons explained above, we conclude that Sandy met his burden of proving a change in residence from his Bolair farm to Upper Glade. Therefore, Sandy is eligible to be a candidate for the open seat on the Webster County Commission. Because Sandy has a clear legal right to be a candidate for office but was prevented from exercising that right, we find that mandamus is the appropriate remedy.

■ This Court also finds that the Ballot Commissioners of Webster County are the proper parties against whom to issue the writ. According to W.Va.Code § 3-1-21(a) (2001), "[t]he board of ballot commissioners for each county shall provide the ballots and sample ballots necessary for the conduct of every election for public officers in which the voters of the county participate." This Court has recognized that "no official or person other than the board of ballot commissioners has the authority to place the names of eligible candidates on a ballot." *State ex rel. Gengo v. Cudden,* 153 W.Va. 190, 197, 168 S.E.2d 541, 545 (1969) (citation omitted). Moreover, "[t]here can be no doubt that [W.Va.Code § 3-1-21] is mandatory in the sense that members of a board of ballot commissioners may be required by mandamus to discharge their duties[.]" *Id.* Finally,

> A board of ballot commissioners has not "legally" performed the duties required of it, which is to prepare a ballot of candidates for the offices to be filled at a primary or general election, until it has placed upon such ballot candidates eligible to be nominated for or elected to the various offices[.]

*State ex rel. Summerfield v. Maxwell,* 148 W.Va. 535, 542-543, 135 S.E.2d 741, 746 (1964).[12]

### III.

### CONCLUSION

For the reasons stated above, this Court has found that the relator, Larry R. Sandy, meets the residence requirement and is eligible to be a candidate in the general election

---

12. Our law is plain that this Court may compel the ballot commissioners to perform their mandatory task. According to W.Va.Code § 3-1-45 (1963), in part:

> Any officer or person, upon whom any duty is devolved by this chapter, may be compelled to perform the same by writ of mandamus.... A mandamus shall lie from the supreme court of appeals, or any one of the judges thereof in

vacation, returnable before said court, to compel any officer herein to do and perform legally any duty herein required of him.

This Court has held that "mandamus would lie to require a board of ballot commissioners to place upon a ballot a candidate judicially determined to be entitled to be a candidate in an election[.]" *State ex rel. Gengo,* 153 W.Va. at 197, 168 S.E.2d at 545.

for the seat on the Webster County Commission available to a resident of the Southern District. Accordingly, we granted a writ of mandamus, as moulded, directing the Ballot Commissioners of Webster County to include the name of Larry R. Sandy, the nominee previously certified by the Board of Canvassers, on the ballot as Democratic candidate for the Office of County Commission for Webster.

Writ granted as moulded.